## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Sterling Bank and Trust, F.S.B.
AND Sterling Bancorp, Inc.,

                Plaintiffs,

    v.

Scott Seligman,

                Defendant,

And

K.I.S.S. Dynasty Trust No. 9, Scott J.
Seligman 1993 Long Term Irrevocable
Dynasty Trust, Scott J. Seligman 1993
Irrevocable Dynasty Trust, Scott J.
Seligman Revocable Living Trust, Joshua
James Seligman Irrevocable Trust No. 1,
Seligman Family Foundation, 311
California LP/tax Kiss LP CO, Presidential
Aviation, Inc., SM Farthington, LTD LLC,
Seligman & Associates, Inc., AND
Seligman Administrative Office

                Nominal
                Defendants.

Civil Action No. 5:22-cv-12398

**Hon. Judith E. Levy**

**Magistrate Judge Elizabeth A.
    Stafford**

## PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO
## MOTION TO DISMISS BY DEFENDANT SCOTT SELIGMAN AND
## NOMINAL DEFENDANTS SCOTT J. SELIGMAN REVOCABLE TRUST,
## SELIGMAN FAMILY FOUNDATION, 311 CALIFORNIA LP/TAX KISS
## LP CO, PRESIDENTIAL AVIATION, INC, SM FARTHINGTON LTD.
## LLC, SELIGMAN & ASSOCIATES, INC.
## <u>AND SELIGMAN ADMINISTRATIVE OFFICE</u>

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

1.

    a.    Where the gravamen of a plaintiff's common law claim for breach of fiduciary duty against a defendant is based on the defendant's role as a controlling person and there is no dispute that the plaintiff sufficiently alleged that the claim accrued within the statute of limitations, is the plaintiff's claim timely?

    b.    Where the plaintiff's claim for unjust enrichment is distinct from its legal claim for breach of fiduciary duty, and where the defendant asserts otherwise only in a footnote, is the plaintiff's claim for unjust enrichment subject to the usual six-year statute of limitations?

2. Where plaintiffs allege that a defendant owns a majority interest in the corporation and also exercises actual control of corporation conduct, have plaintiffs sufficiently alleged that the defendant owes a duty to the corporation?

3. Where plaintiffs allege that the defendant wrongfully obtained benefits from them, and that it would be inequitable for the defendant to retain those benefits, have plaintiffs stated a claim for unjust enrichment?

4. Where plaintiffs allege that nominal defendants hold property on behalf of the main defendant, who acquired that property through breach of fiduciary duty and unjust enrichment, have plaintiffs properly named those nominal defendants as parties to the litigation?

5. Where a complaint alleges that the defendant is primarily responsible for plaintiffs' injuries, and where the defendant cannot show from the face of the complaint that the plaintiff's culpability for the alleged injuries is greater than the defendant's culpability, should the Court deny defendant's attempt to invoke the wrongful conduct rule to dismiss the plaintiff's complaint?

## **CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

1.

Mich. Comp. Laws §§ 600.5805, 600.5827

Mich. Comp. Laws § 600.5813

*Taybron v. Liberty Mut. Pers. Ins. Co.*, 568 F. Supp. 3d 854 (E.D. Mich. 2021)

*Murphy v. Inman*, 983 N.W.2d 354 (Mich. 2022)

*Miller v. Magline, Inc*., 256 N.W.2d 761 (Mich. Ct. App. 1977)

*PCA Mins., LLC v. Merit Energy Co., LLC*, 725 F. App'x 342 (6th Cir. 2018)

*Williams v. Chase Bank*, No. 15-10565, 2015 WL 4600067 (E.D. Mich. July 29, 2015)

2.

*Grand Traverse Band of Ottawa & Chippewa Indians v. Blue Cross & Blue Shield of Michigan*, 391 F. Supp. 3d 706 (E.D. Mich. 2019)

*In re Pattern Energy Grp. Inc. S'holders Litig.*, No. CV 2020-0357-MTZ, 2021 WL 1812674, at *39 (Del. Ch. May 6, 2021)

*Kahn v. Lynch Commc'n Sys., Inc.*, 638 A.2d 1110 (Del. 1994)

*Salvadore v. Connor*, 276 N.W.2d 458 (Mich. Ct. App. 1978)

3.

*Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662 (E.D. Mich. 2008)

*PCA Mins., LLC v. Merit Energy Co.*, 725 F. App'x 342 (6th Cir. 2018)

*Tkachik v. Mandeville*, 790 N.W.2d 260 (Mich. 2010)

*Wright v. Genessee Cnty.*, 934 N.W.2d 805 (Mich. 2019)

4.

*Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch, Inc*., 276 F.3d 187 (4th Cir. 2002)

*SEC v. George*, 426 F.3d 786 (6th Cir. 2005)

*SEC v. Cherif*, 933 F.2d 403 (7th Cir. 1991)

5.

*In re Great Lakes Comnet, Inc.*, 588 B.R. 1 (Bankr. W.D. Mich. 2018)

*Orzel by Orzel v. Scott Drug Co.*, 537 N.W.2d 208 (Mich. 1995)

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................ 3

I.    Factual Background ....................................................................................... 3

II.    Procedural History ...................................................................................... 5

III.    Legal Standards ......................................................................................... 6

ARGUMENT ..................................................................................................... 7

I.    The statute of limitations does not bar Sterling's claims ................................ 7

  A.  Sterling's claim for breach of fiduciary duty is timely .................................. 7

  B.  Sterling's claim for unjust enrichment is timely, too ................................... 13

II.    Sterling plausibly alleges that Seligman, as a controlling person, owed and breached fiduciary duties to the Bank and the Holding Company ................ 14

  A.  Seligman owed fiduciary duties to Sterling................................................ 14

  B.  Seligman breached his duties to Sterling.................................................. 22

III.    Sterling has stated a claim for unjust enrichment......................................... 24

  A.  Seligman unjustly benefitted from the payments ......................................... 24

  B.  Seligman's arguments that he was not unjustly enriched by the dividend payments are meritless.......................................................................... 26

  C.  Seligman's arguments that he was not unjustly enriched by payments from Sterling to the Seligman-affiliated and -controlled trusts and entities fall short, too 30

  D.  Sterling's unjust enrichment claim is not governed by any express contract, and it lacks an adequate remedy at law ................................................... 32

IV.    Sterling properly named the nominal defendants......................................... 36

V.    The wrongful conduct rule does not apply here ........................................... 37

CONCLUSION ................................................................................................. 40

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Adams*,
　742 N.W.2d 399 (Mich. Ct. App. 2007)...............................................................8

*Adkins v. Annapolis Hosp.*,
　323 N.W.2d 482 (Mich. Ct. App. 1982)............................................................10

*Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*,
　249 F.3d 450 (6th Cir. 2001) ..............................................................................18

*Ashcroft v. Iqbal*,
　556 U.S. 677 (2009)......................................................................................6, 29

*Baks v. Moroun*,
　576 N.W.2d 413 (Mich. Ct. App. 1998).....................................................11, 12

*Baron v. Allied Artists Pictures Corp.*,
　337 A.2d 653 (Del. Ch. 1975) ...........................................................................26

*Basho Techs. Holdco B, LLC v. Georgetown Basho Invs., LLC*,
　No. CV 11802-VCL, 2018 WL 3326693 (Del. Ch. July 6, 2018) ....................19

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007)....................................................................................29, 32

*Brint Elec., Inc. v. TG4USA, Inc.*,
　No. 17-CV-10187, 2017 WL 9718993 (E.D. Mich. July 14, 2017)..................28

*Buttonwood Tree Value Partners, L.P. v. Polk*,
　No. 9250-VCG, 2017 WL 3172722 (Del. Ch. July 24, 2017) ..........................16

*Coleman v. Ditech Fin.*,
　No. 16-cv-11124, 2016 WL 3522556 (E.D. Mich. June 24, 2016)...................27

*Colman v. Shimer*,
　163 F.Supp. 347 (W.D.Mich.1958) ...................................................................36

*Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch, Inc.*,
  276 F.3d 187 (4th Cir. 2002) ...............................................................37

*Corwin v. KKR Fin. Holdings LLC*,
  125 A.3d 304 (Del. 2015) ...................................................................21

*Covenant Med. Ctr., Inc. v. Bagley*,
  No. 221CV11221, 2022 WL 3648176 (E.D. Mich. Aug. 24, 2022) .................34

*Delman v. GigAcquisitions3, LLC*,
  No. 2021-0679-LWW, 2023 WL 29325 (Del. Ch. Jan. 4, 2023).....................22

*Dobronski v. TBI, Inc.*,
  2021 WL 1585203 (E.D. Mich. Mar. 11, 2021)...........................................6, 38

*Dodge v. Ford Motor Co.*,
  170 N.W. 668, 682 (Mich. 1919).............................................................26

*Eshleman v. Keenan*,
  187 A. 25 (Del Ch. 1936) ....................................................................18

*In re Est. of Karmey*,
  658 N.W.2d 796 (Mich. 2003)...............................................................18

*Estes v. Idea Eng'g & Fabrications, Inc.*,
  649 N.W.2d 84 (Mich. 2002)..............................................................11, 12

*In re Ezcorp Inc. Consulting Agreement Derivative Litig.*,
  No. CV 9962-VCL, 2016 WL 301245 (Del. Ch. Jan. 25, 2016).....................18

*Farish v. Dep't of Talent & Econ. Dev.*,
  971 N.W.2d 1 (Mich. Ct. App. 2021)........................................................28

*Fenestra Inc. v. Gulf Am. Land Corp.*,
  141 N.W.2d 36 (Mich. 1966)..............................................................21, 23

*Firefighters' Pension Sys. of City of Kansas City, Missouri Tr. v. Presidio, Inc.*,
  251 A.3d 212 (Del. Ch. 2021) ...............................................................19

*George S. Hofmesiter Fam. Trust Dated June 21, 1991 v. FGH Indus., LLC*,
No. 06-CV-13984-DT, 2008 WL 1809205 (E.D. Mich. Apr. 21, 2008) ................................................................................................40

*Grand Traverse Band of Ottawa & Chippewa Indians v. Blue Cross & Blue Shield of Michigan*,
391 F. Supp. 3d 706 (E.D. Mich. 2019) ....................................14, 22

*In re Great Lakes Comnet, Inc.*,
588 B.R. 1 (Bankr. W.D. Mich. 2018) ........................................7, 37

*Hoving v. Transnation Title Ins. Co.*,
545 F. Supp. 2d 662 (E.D. Mich. 2008) ............................................31

*Jodway v. Orlans, PC*,
759 F. App'x 374 (6th Cir. 2018) ..............................................6, 7

*Jonna v. Latinum*,
No. 22-10208, 2022 WL 2960130 (E.D. Mich. July 26, 2022)...........................31

*Kahn v. Lynch Commc'n Sys., Inc.*,
638 A.2d 1110 (Del. 1994) ..................................................15, 17

*Kearney v. Jandernoa*,
979 F. Supp. 576 (W.D. Mich. 1997) ....................................................21

*Lee v. Cincinnati Cap. Corp.*,
434 F. Supp. 3d 601 (E.D. Mich. 2020) ....................................33, 34

*Loftis v. United Parcel Service, Inc.*,
342 F.3d 509 (6th Cir. 2003) ..............................................................7

*Estate of McCallum*,
395 N.W.2d 258 (Mich. Ct. App. 1986)................................................29

*McCreary v. Shields*,
52 N.W.2d 853 (Mich. 1952)...........................................................24

*Meretta v. Peach*,
491 N.W.2d 278 (Mich. Ct. App. 1992)............................................31

*Michigan Med. Serv. v. Sharpe*,
 64 N.W.2d 713 (Mich. 1954)................................................................28

*Miller v. Magline, Inc.*,
 256 N.W.2d 761 (Mich. Ct. App. 1977)................................................7

*Moll v. Abbott Lab'ys.*,
 506 N.W.2d (Mich. 1993)......................................................................7

*In re Morton's Rest. Grp., Inc. S'holders Litig.*,
 74 A.3d 656 (Del. Ch. 2013) ...............................................................21

*Murphy v. Inman*,
 983 N.W.2d 354 (Mich. 2022)....................................................11, 18

*In re Newpower*,
 233 F.3d 922 (6th Cir. 2000) ...............................................................31

*In re NM Holdings Co., LLC*,
 622 F.3d 613 (6th Cir. 2010) ...............................................................39

*Orzel by Orzel v. Scott Drug Co.*,
 537 N.W.2d 208 (Mich. 1995)......................................................38, 39

*Parrino v. Price*,
 869 F.3d 392 (6th Cir. 2017) .................................................................6

*In re Pattern Energy Grp. Inc. S'holders Litig.*,
 No. CV 2020-0357-MTZ, 2021 WL 1812674 (Del. Ch. May 6,
 2021) .......................................................................................18, 19, 21

*PCA Mins., LLC v. Merit Energy Co., LLC*,
 725 F. App'x 342 (6th Cir. 2018).................................................*passim*

*Peabody v. DiMeglio*,
 856 N.W.2d 245 (Mich. Ct. App. 2014)..............................................34

*Reisenfeld & Co. v. Network Grp., Inc.*,
 277 F.3d 856 (6th Cir. 2002) ...............................................................29

*Reyes-Trujillo v. Four Star Greenhouse, Inc.*,
 513 F. Supp. 3d 761 (E.D. Mich. 2021) ..............................................28

*S. Pac. Co. v. Bogert*,
    250 U.S. 483 (1919)..........................................................................18

*SEC v. Cherif*,
    933 F.2d 403 (7th Cir. 1991) ...........................................................36

*SEC v. George*,
    426 F.3d 786 (6th Cir. 2005) ......................................................32, 36

*Salvadore v. Connor*,
    276 N.W.2d 458 (Mich. Ct. App. 1978)......................................22, 23

*Simmons v. Apex Drug Stores, Inc.*,
    506 N.W.2d 562 (Mich. Ct. App. 1993)............................................11

*Taybron v. Liberty Mut. Personal Ins. Co.*,
    568 F. Supp. 3d 854 (E.D. Mich. 2021) ...........................................13

*Thompson v. Walker*,
    234 N.W. 144 (Mich. 1931)..............................................................23

*Tkachik v. Mandeville*,
    790 N.W.2d 260 (Mich. 2010)..........................................................27

*United States v. Dairy Farms of Am., Inc.*,
    426 F.3d 860 (6th Cir. 2006) ............................................................13

*United States v. Quicken Loans Inc.*,
    239 F. Supp. 3d 1014 (E.D. Mich. 2017) .........................................15

*In re Unumprovident Corp. Sec. Litig.*,
    396 F. Supp. 2d 858 (E.D. Tenn. 2005)............................................16

*Veeser v. Robinson Hotel Co.*,
    266 N.W. 54 (Mich. 1936)................................................................23

*Voigt v. Metcalf*,
    No. CV 2018-0828-JTL, 2020 WL 614999 (Del. Ch. Feb. 10,
    2020) ............................................................................................19, 20

*Waltzer v. Transidyne Gen. Co.*,
    697 F.2d 130 (6th Cir.1983) ...............................................................6

*Williams v. Chase Bank*,
  No. 15-10565, 2015 WL 4600067 (E.D. Mich. July 29, 2015)..........................13

*Wright v. Genessee Cnty.*,
  934 N.W.2d 805 (Mich. 2019)................................................................24, 33, 35

*Young v. VanderMeer*,
  No. 349093, 2021 WL 744532 (Mich. Ct. App. Feb. 25, 2021) ......................34

**Statutes**

Mich. Comp. Law
  § 450.1106(3)......................................................................................................9
  § 450.1531(1)......................................................................................................9
  § 450.1541a(4)................................................................................................8, 9
  § 600.5805......................................................................................................7, 12
  § 600.5813..........................................................................................................13
  § 600.5827......................................................................................................7, 12

**Other Authorities**

1A CJS, Actions, § 29 .........................................................................................38

Plaintiffs Sterling Bank and Trust, F.S.B. and Sterling Bancorp, Inc. (together, "Sterling") submit this brief in opposition to the Motion to Dismiss by Defendant Scott Seligman ("Seligman") and Nominal Defendants Scott J. Seligman Revocable Living Trust, Seligman Family Foundation, 311 California LP/Tax KISS LP Co, Presidential Aviation, Inc., SM FArthington, Ltd. LLC, Seligman & Associates, Inc., and Seligman Administrative Office (in this brief, "Nominal Defendants" and together with Seligman, "Defendants") [Dkt. 26].

## **INTRODUCTION**

Over the last decade, Scott Seligman, the scion of Sterling's founding family and Sterling's controlling shareholder, usurped authority to exert near total control over Sterling and its wholly owned subsidiary, Sterling Bank and Trust, F.S.B. (the "Bank"), a federally insured depository institution. Seligman used his improper assertion of power to enrich himself at the expense of Sterling, giving rise to Sterling's suit against Seligman for breach of fiduciary duty and unjust enrichment.

Defendants seek to dismiss Sterling's complaint, arguing that Sterling's claims are both untimely and inadequately pled and that Sterling's suit is barred by Michigan's wrongful-conduct rule. Defendants are wrong. Defendants' motion mischaracterizes Sterling's allegations and the applicable law. Sterling's actual allegations, taken, as they must be, in the light most favorable to Sterling, state

plausible claims for breach of fiduciary duty and unjust enrichment.  Accordingly, Defendants motion to dismiss should be denied

Seligman's domination and control over Sterling's affairs, its top-level management, and its employees gave rise to fiduciary duties under the common law.  Those common law fiduciary duties can and do coexist with statutory claims against officers or directors under Michigan's Business Corporation Act.  Seligman does not dispute that Sterling's claim is timely under the three-year statute of limitation for common law breach of duty.

Sterling also has stated a plausible claim for unjust enrichment against Seligman by alleging that Seligman's wrongful conduct induced Sterling's Board to issue greater dividends than it otherwise would have had it known of Seligman's actions, and that Seligman wielded control over Sterling's top-level management to execute his will and direct Sterling's resources to himself, both directly and indirectly through the nominal defendants.  These nominal defendants have been properly named because Sterling seeks, as post-judgment relief, to recoup any funds that they may hold in a possessory interest for Seligman's ultimate benefit.

Finally, the wrongful conduct rule does not support dismissing Sterling's Complaint.  The wrongful conduct rule requires a fact-bound inquiry, and it does not bar claims where, as here, the defendant is most culpable for the plaintiff's injuries.

2

## BACKGROUND

### I.     Factual Background

Seligman chartered the Bank, then known as Sterling Savings and Loan Association, in 1984.  Compl. ¶ 9, PageID.6.  The Bank is a wholly owned subsidiary of Sterling, Bancorp, Inc., which went public in 2017.  *Id.* ¶¶ 7, 33, PageID.5, 14.  During the relevant time period, Seligman served as consulting director to the Board of Directors of the Bank, Vice President of the Holding Company, and, through various personal and family trusts, controlling shareholder of the Holding Company.  *Id.* ¶ 9, 19, PageID.6, 8-9.

Seligman leveraged his status as founder of the Bank and his positions as Consulting Director, Vice President, and controlling shareholder to exercise power, influence, and control over Sterling's affairs, its employees, and its top-level management.  *Id.* ¶ 20, PageID.9.  He viewed the Bank as *his* Bank, inserting himself into all aspects of Sterling's affairs, from the minutiae of Bank decorations and employee daily behavior to large-scale decisions about the Bank's once-flagship Advantage Loan Program ("ALP"), and he created an atmosphere in which what he said, went.  *Id.* ¶¶ 27, 31, 33, 41, PageID.11-12, 13, 14, 16.  Because he viewed Sterling as *his* property, he felt that he could do whatever he wanted with its funds, *id.* ¶ 86, PageID.33, and he ultimately extracted millions of dollars from Sterling for his own benefit, *id.* ¶¶ 87-91, PageID.33-34.

3

With respect to the ALP, Seligman was deeply involved in its design, development, and implementation, and he put increasing pressure on the Bank to increase its ALP lending volumes and underwriting times, to the point where legitimate underwriting realistically could not be completed. *Id.* ¶¶ 42, 49, PageID.16, 19. He took actions that both directly and indirectly caused the Bank to originate fraudulent loans, *id.* ¶¶ 43-55, PageID.16-21, and he did so with actual knowledge of red flags of fraud associated with the origination of Advantage Loans, *id.* ¶ 56-63, PageID.21-24. He refused to implement, and was openly hostile to implementing, the minimal guard rails to ensure that Advantage Loans complied with federal regulations and the Bank's credit policies. *Id.* ¶ 57, PageID.22. He took these wrongful actions to temporarily inflate the Bank's valuation, solely to maximize his own profits. *Id.* ¶ 64, PageID.25. When Seligman caused the Holding Company to go public in 2017, his net proceeds totaled almost $73.7 million. *Id.* ¶ 72, PageID.26-27. He could not have received these outsized returns but for his dishonest and reckless design of and control over the ALP. *Id.* ¶ 74, PageID.27-28. His wrongful actions left Sterling in the crosshairs of government regulators, enforcement agencies, criminal investigators, class action plaintiffs, and shareholders. *Id.* ¶ 1, PageID.2.

As a result, Sterling has incurred significant costs for its efforts to remedy the issues that Seligman directly caused. *Id.* ¶ 75, PageID.28. In June 2019,

Sterling first felt the impact of Seligman's breaching actions when the Bank entered into a formal agreement with the Department of Treasury's Office of the Comptroller of the Currency relating primarily to certain aspects of the Bank's Bank Secrecy Act/Anti-Money Laundering compliance program, as well as the Bank's credit administration and residential loan underwriting.  *Id*.  Additional government inquiries then followed, all related to or otherwise stemming from Seligman's brainchild, the ALP.  *Id.*

Because of Seligman's misconduct and the harm it caused, Sterling filed suit against Seligman, seeking redress for his breach of fiduciary duty as a controlling shareholder and for the return of Sterling's funds that he had extracted for his own benefit.  *See generally* Compl., PageID.1-38.  Sterling also sued certain Seligman-controlled entities as nominal defendants because they possess funds that are the subject of the suit and therefore may be necessary to effectuate complete relief.

## II.   <u>Procedural History</u>

On December 9, 2021, the Parties entered into an agreement tolling the statute of limitations for Sterling's claims against Seligman as of December 7, 2021.  Ex. D to Mot, PageID.841-844.  On October 7, 2022, Sterling and the Bank filed this suit in the Eastern District of Michigan.  *Sterling Bank & Trust, F.S.B. v. Seligman*, No. 2:22-cv-12398.  On January 30, 2023, Defendants moved under

5

Federal Rule of Civil Procedure 12(b)(6) to dismiss Sterling's claims against

Seligman, and to dismiss the nominal defendants from the case.

### III.   Legal Standards

To survive a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6), a plaintiff must plead "sufficient factual matter" to "state a claim to relief

that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In

evaluating whether a plaintiff has met this threshold, a court must "construe the

complaint in the light most favorable to the plaintiff, accepting all well-pleaded

allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017).

Because motions to dismiss are limited to the allegations on the face of the

Complaint, affirmative defenses, such as the statute of limitations and wrongful

conduct rule, require resolution of factual questions that are typically not proper for

adjudication at the motion to dismiss stage. *Jodway v. Orlans, PC*, 759 F. App'x

374, 379 (6th Cir. 2018) (motion to dismiss "is generally an inappropriate vehicle

for dismissing a claim based upon the statute of limitations"); *Waltzer v.

Transidyne Gen. Co.*, 697 F.2d 130, 133 (6th Cir. 1983) ("[U]nder Michigan law,

the date of accrual of a cause of action for statute of limitations purposes is a

question of fact for the jury."); *see Dobronski v. TBI, Inc.*, No. 20-11910, 2021 WL

1585203, at *3 (E.D. Mich. Mar. 11, 2021) (wrongful conduct rule "require[s]

factual development and analysis that is not appropriate in a motion to dismiss").

The burden is on the defendant to show that any affirmative defenses are dispositive on the face of the Complaint. *Jodway*, 759 F. App'x at 379; *In re Great Lakes Comnet, Inc.*, 588 B.R. 1, 12 (Bankr. W.D. Mich. 2018).

## ARGUMENT

### I.    The statute of limitations does not bar Sterling's claims

#### A.    Sterling's claim for breach of fiduciary duty is timely

Sterling sued Seligman for breach of his common law fiduciary duties as controlling person of Sterling. Compl. ¶¶ 94-96, PageID.35-36. Seligman does not dispute that such a claim is subject to a three-year statute of limitations. *See Miller v. Magline, Inc.*, 256 N.W.2d 761, 774 (Mich. Ct. App. 1977); Mich. Comp. Laws §§ 600.5805, 600.5827. Because the Complaint plainly alleges that Sterling suffered an injury less than three years before it sued Seligman, not counting days excluded by the parties' tolling agreement, Sterling's common law breach of duty claim is timely on its face. *See Moll v. Abbott Lab'ys.*, 506 N.W.2d 816, 822 (Mich. 1993).

Rather than focus on the common law claim that Sterling has asserted, Seligman attacks a straw man. He argues that Sterling should have brought a statutory claim under Michigan's Business Corporations Act ("BCA") for breach of fiduciary duty by an officer or director, and if it had, that claim supposedly would be governed by the BCA's shorter, two-year statute of limitations. *See* Mot. at 12-13, PageID.467-468. But Sterling is the master of its complaint, *Loftis v.*

*United Parcel Serv., Inc.*, 342 F.3d 509, 514-15 (6th Cir. 2003), and it has not brought the statutory claim that Seligman attacks.

Seligman argues that the Court must conduct a "gravamen" analysis to recharacterize Sterling's common law claim for breach of Seligman's duties as controlling shareholder into a statutory claim for breach of Seligman's duties as a director or officer. Mot. at 16-17 (citing Mich. Comp. Law § 450.1541a(4) , which provides for "[a]n action against a director for failure to perform the duties imposed by this section"). His argument fails because the gravamen of Sterling's claim is a common law, not statutory, one.

When conducting a gravamen analysis, courts look to "the true nature of the wrong alleged." *PCA Mins., LLC v. Merit Energy Co., LLC*, 725 F. App'x 342, 348 (6th Cir. 2018). "The type of interest allegedly harmed is the focal point" of the analysis. *Adams v. Adams*, 742 N.W.2d 399, 403 (Mich. Ct. App. 2007). Here, the true nature of the wrong that Sterling alleges is that Seligman violated his common law duties as a shareholder exerting control over Sterling, not his statutory duties as a director or officer of Sterling. Compl. ¶¶ 94-95, PageID.35.

As to the Bank, the analysis is straightforward. Seligman did not have fiduciary duties as an officer or director of the Bank because Seligman was neither a director nor an officer of the Bank. *See id.* ¶ 9, PageID.6. Although Seligman had the title of "Consulting Director to the Bank's Board," his duties were limited

to "providing general policy advice to the board of directors." Ex. A at Art. III, Sec. 14. He was not permitted to "perform the same functions as a director," "vote on any matter before the board," or "exercise significant influence over, or participate (other than in an advisory capacity) in, major policy-making decisions of the board." *Id.* Accordingly, Seligman was not a "Director," as the term is defined in the BCA because he was not "a member of the board of [the] corporation." Mich. Comp. Law § 450.1106(3).[1]

Similarly, the gravamen of the Holding Company's claim cannot be for breach of Seligman's duties as a director because Seligman was not a director of the Holding Company at any relevant time. *See* Compl. ¶ 9, PageID.6. Although Seligman was a vice president of the Holding Company, Sterling's claim against him is not for "failure to perform [his] duties" as a vice president, which is the kind of claim available under the statute. *See* Mich. Comp. Law § 450.1541a(4). Instead, the gravamen of Sterling's complaint is that Seligman, as founder and controlling shareholder, wrongly usurped authority and bullied others so as to dominate and control Sterling, breaching the fiduciary duties he owed under Michigan common law as a controlling person. *See, e.g.*, Compl. ¶¶ 94-95,

---

[1] The Bylaws also exclude advisory or consulting directors from the definition of "officer." *See* Ex. A at Art. V, Sec. 1; Mich. Comp. Law § 450.1531(1) (defining "officers" with reference to bylaws). Thus, Seligman's "Consulting Director" status did not make him an "officer" of the Bank, either.

9

PageID.35.  Because "the true nature of the wrong alleged," is Seligman's abuse of the power he wielded as a controlling shareholder, not his failure to perform his duties as vice president, the gravamen of the Holding Company's claim is for breach of Seligman's duties as a controlling shareholder.  *PCA Mins.*, 725 F. App'x at 348.

Even if Sterling could have brought a statutory claim against Seligman for breach of his statutory duties as vice president or because of his non-officer/non-director role as consultant, that does not mean that the limitations period governing statutory claims supersedes the limitations periods governing common law claims. As the Sixth Circuit explained, "nothing prohibits a plaintiff from pleading multiple claims when there are, in fact, multiple theories of liability that are legally viable and consistent with the facts; where a plaintiff has a contract claim, tort claim, and a claim for statutory violation, all may be pled." *Id.* at 349.  And when multiple theories of liability are legally viable, the "applicable period of limitations depends upon the theory actually pled when the same set of facts can support either of two distinct causes of action." *Id.* (quoting *Adkins v. Annapolis Hosp.*, 323 N.W.2d 482, 485 (Mich. Ct. App. 1982)).

Here, the Michigan Supreme Court recently confirmed that common law tort claims for breach of fiduciary duty remain viable notwithstanding the existence of statutory claims in the BCA, holding the BCA did not "set[] forth a comprehensive

legislative scheme in which the Legislature intended the statutory duties codified in § 541a(1) to supersede and replace all common-law fiduciary duties." *Murphy v. Inman*, 983 N.W.2d 354, 367 (Mich. 2022).[2]  Because Sterling pleaded a viable common law claim for breach of Seligman's duties as a controlling shareholder, the Court must apply the statute of limitations applicable to such common law claims, regardless of whether the same facts could support a claim against Seligman for breach of his statutory duties.  *PCA Mins.*, 725 F. App'x at 348.

Seligman relies on *Baks v. Moroun*, 576 N.W.2d 413, 419 (Mich. Ct. App. 1998), for the proposition that "any action for breach of fiduciary duty against a corporate officer or director, . . . is subject to the period of limitation set forth in § 541a(4) if the action alleges conduct that violates the standard of conduct for directors and officers found in § 541a(1)."  Mot. at 13, PageID.468 (quoting *Baks*, 576 N.W.2d at 419).  Seligman's reliance on *Baks* is misplaced because that case has been overruled.[3]  *Estes v. Idea Eng'g & Fabricating, Inc.*, 649 N.W.2d 84, 93 (Mich. Ct. App. 2002).

---

[2] For this reason, *Simmons v. Apex Drug Stores, Inc.*, 506 N.W.2d 562, 564 (Mich. Ct. App. 1993), and similar cases are inapposite.  Specifically, *Simmons* held that a shorter statute of limitations for negligent medical malpractice (a species of a claim) subsumed the longer statute of limitations for negligence in general (the genus of the claim).  *Id.*  Breach of a controlling shareholder's duties to a corporation, on the other hand, is not a species of the genus of breach of fiduciary duties of a director or officer.

[3] Even if *Baks* had not been overruled, Seligman's argument would still fail because Sterling's claim is not for "conduct that violates the standard of conduct

*Baks* imposed the statute of limitations in Section 541a onto a separate statutory claim under Section 489, rather than imposing a six-year catch-all provision. *Baks*, 576 N.W.2d at 420. *Estes* overruled *Baks* "because § 489 creates a separate cause of action and does not contain its own statute of limitations, [and therefore] the catch-all six-year period of limitation set forth in M.C.L. § 600.5813 applies." *Estes*, 649 N.W.2d at 285. Thus, *Estes* rejects the argument that Section 541a's limitations period applies whenever a director or officer may have violated his fiduciary duties and, instead, simply applies the limitations period applicable to the claim the plaintiff actually pled. *Id.* at 285-86.

Applying *Estes* to this case, the common law creates a separate cause of action from Section 541a, requiring the Court to apply the three-year limitations period applicable to the common law claim Sterling pleaded, not the two-year period applicable to statutory claims under Section 541a that Sterling has *not* pled. Mich. Comp. Laws §§ 600.5805, 600.5827.

Because it is undisputed that Sterling's claims are timely under the statute of limitations appliable to common law fiduciary duty claims—the only kind of fiduciary duty claim Sterling has actually pled—Seligman's statute of limitations defense fails.

---

for directors and officers found in § 541a(1)," but for conduct that violates the standard of conduct for controlling shareholders found in the common law.

## B. Sterling's claim for unjust enrichment is timely, too

In a footnote, Defendants assert that Sterling's claim for unjust enrichment is barred by the statute of limitations. Mot. at 29 n.9, PageID.484. The Court should reject this argument because "[a]n argument set forth exclusively in a footnote is not properly presented for the court's review." *Taybron v. Liberty Mut. Pers. Ins. Co.*, 568 F. Supp. 3d 854, 860 (E.D. Mich. 2021) (citing *United States v. Dairy Farms of Am., Inc.*, 426 F.3d 860, 856 (6th Cir. 2006)).

Defendants' perfunctory argument also fails on the merits. Defendants seek to apply the BCA's two-year statute of limitations to Sterling's unjust enrichment claim. There is no basis for doing so.

Unjust enrichment claims carry a six-year statute of limitations. *Williams v. Chase Bank*, No. 15-10565, 2015 WL 4600067, at *4 (E.D. Mich. July 29, 2015) (citing Mich. Comp. Laws § 600.5813). Although Michigan courts will apply a shorter statute of limitations when an "unjust enrichment claim . . . is simply a recasting of [another legal] claim," with a shorter limitation, that rule is not applicable here. *PCA Mins.*, 725 F. App'x at 349. Sterling's unjust enrichment claim "is a distinct claim" from its breach of fiduciary duty claim, and "nothing prohibits a plaintiff from pleading multiple claims when there are, in fact, multiple theories of liability that are legally viable and consistent with the facts." *Id.* at 349.

13

Moreover, Michigan provides for "different statutes of limitations," even for "claims based on the same facts." *Id.*

Here, Sterling's unjust enrichment claim is not a "recasting" of its breach of fiduciary duty claim.  The two distinct claims arise from overlapping but different factual allegations, and they seek different relief from different types of harm. Sterling's breach of fiduciary duty claim arises from Seligman's control of the ALP and seeks compensation for the Bank's investigative and defense costs in connection with Seligman's conduct, disgorgement of Seligman's IPO proceeds, and forfeit or transfer of the shares that Seligman received in the IPO.   By contrast, Sterling's unjust enrichment claim seeks restitution of payments that the Holding Company made to Seligman and that it would be unjust for Seligman to retain.  Thus, Sterling's claim for unjust enrichment is distinct from its legal claim for breach of fiduciary duty, and there is no basis to apply anything other than the presumptive six-year statute of limitations under Michigan law.

II.   **<u>Sterling plausibly alleges that Seligman, as a controlling person, owed and breached fiduciary duties to the Bank and the Holding Company</u>**

A.   **Seligman owed fiduciary duties to Sterling**

Michigan courts impose fiduciary duties "when one person assumes control and responsibility over another."  *Grand Traverse Band of Ottawa & Chippewa Indians v. Blue Cross & Blue Shield of Mich.*, 391 F. Supp. 3d 706, 716 (E.D. Mich. 2019). "[D]etermining whether [a particular relationship] amounts to a

14

fiduciary relationship is a question of fact." *United States v. Quicken Loans Inc.*, 239 F. Supp. 3d 1014, 1045 (E.D. Mich. 2017).  "Because the inquiry as to whether a fiduciary relationship exists is fact-specific, a claim alleging the existence and breach of fiduciary duties is generally not subject to dismissal under Rule 12(b)(6)." *Id.* (internal quotation omitted).  "Th[us] . . .  a finding that a fiduciary relationship existed between the parties often requires an examination into a fully developed record  . . . ." *Id.* (internal quotation omitted).

In the corporate context, a defendant has the requisite level of control to owe fiduciary duties if he (1) owns a majority interest in the corporation *or* (2) if the defendant exercises "actual control of corporation conduct." *Kahn v. Lynch Commc'n Sys., Inc.*, 638 A.2d 1110, 1113-14 (Del. 1994).  Sterling alleges Seligman had effective control under both alternatives.

First, the Complaint alleges that Seligman, members of his family, and various family trusts, with a common trustee, owned 70% or more of the Holding Company, and Seligman himself beneficially owned 47%.  Compl. ¶ 19 & n.1, PageID.8-9.  Moreover, Seligman created the appearance to the outside world that Seligman controlled all of the family holdings.  *Id.* ¶ 19 n.1, PageID.9.  Indeed, the Holding Company disclosed in its SEC filings that Seligman represents the interests of the family in his dealings with Sterling.  *Id.* ¶ 20, PageID.9.

It is appropriate to aggregate Seligman's ownership interest with those of his family members and related trusts when assessing the "minimal burden" at the motion to dismiss stage to plead that Seligman owned a majority interest in Sterling. *Buttonwood Tree Value Partners, L.P. v. R.L. Polk & Co.*, No. 9250-VCG, 2017 WL 3172722, at *6 (Del. Ch. July 24, 2017) (aggregating defendant's and his family's shares where corporate filings referred to family members as a block).[4]

Second, the Complaint makes factual allegations that Seligman exerted near total control over Sterling, Compl. ¶ 1, PageID.2, by instituting a monthly shareholder meeting with the Bank's top management, *id.* ¶ 24, PageID.10; attending dozens, perhaps hundreds of regular management meetings, *id.* ¶ 25, PageID.11; directing the Bank's spending, *id.* ¶ 27, PageID.11, which included forcing budget and expense limitations while keeping key internal control and

---

[4] Seligman's argument that the Complaint is "simply wrong" in alleging Seligman controlled his trustee, Mr. Rubenstein, is plainly inappropriate on a motion to dismiss, where the Court must accept the Complaint's allegations as true. Mot. at 21, PageID.476. Further, Seligman cannot rely on SEC filings to attempt to contradict the allegations in the Complaint. *In re Unumprovident Corp. Sec. Litig.*, 396 F. Supp. 2d 858, 877–78 (E.D. Tenn. 2005) ("[A]lthough [the] court may take judicial notice of documents filed with the SEC, [s]uch documents should be considered only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' content.") (internal quotation omitted).

audit functions underfunded; overseeing the hiring and firing of personnel, *id.* ¶ 28, PageID.12; dictating employees' responsibilities and compensation, *id.*; instructing employees at all levels to implement his plans on pain of sidelining, demotion, or termination, *id.* ¶ 29, PageID.12; cowing management from disciplining employees who violated policies related to the ALP, *id.* ¶ 43, PageID.16-17; maintaining an intimate personal relationship and close business relationship with Managing Director of Residential Lending Yihou Han, *id.* ¶ 44, PageID.17—who has since pled guilty to conspiracy to commit bank fraud for her actions with respect to the ALP, *id.* ¶ 47, PageID.18-19; directing employees to do Han's bidding or face his wrath, *id.* ¶ 46, PageID.17-18; demanding employees prioritize speed over control measures in processing loans for the ALP, *id.* ¶ 52, PageID.19-20; and using a robot with video and audio capabilities (known as the "Scott Bot") to check-in on various employees throughout the Bank's offices, *id.* ¶ 31, PageID.13. These allegations, which must be taken as true, establish "actual control of corporation conduct." *Kahn*, 638 A.2d at 1114.

Indeed, Seligman does not dispute that Sterling has plausibly alleged that Seligman actually controlled Sterling. Instead, Seligman argues that Sterling must establish several formalistic requirements beyond merely alleging actual control. Each of these arguments is without merit.

Seligman argues he does not owe fiduciary duties to the Bank because he owns shares only in the Bank's 100% owner, the Holding Company, not the Bank itself.  Mot. at 19-20, PageID.474-475.  This argument fails because "fiduciary duties extend[] to an individual defendant [who is] the company's 'ultimate controller,' even though he exercised control only indirectly and did not himself own stock."  *In re Pattern Energy Grp. Inc. S'holders Litig.*, No. 2020-0357-MTZ, 2021 WL 1812674, at *39 (Del. Ch. May 6, 2021).  Thus, courts "consistently have looked to who wields control in substance and have imposed the risk of fiduciary liability on that person."  *In re Ezcorp Inc. Consulting Agreement Derivative Litig.*, No. 9962-VCL, 2016 WL 301245, at *9 (Del. Ch. Jan. 25, 2016) (citing *Eshleman v. Keenan*, 187 A. 25 (Del Ch. 1936)).[5]  Because a court must decide only if the complaint adequately alleges *whether* Seligman exercised actual

---

[5] Seligman's argument that a federal court should not create new causes of action under state law misses the mark.  The court will not be creating a new cause of action here.  Michigan law has long recognized that control gives rise to fiduciary duties.  *In re Est. of Karmey*, 658 N.W.2d 796, 799 (Mich. 2003) (stating control test).  Moreover, Delaware decisions on this precise issue stem from an uncontroversial, 104-year-old United States Supreme Court decision holding that "[i]t is the fact of control of the common property held and exercised, not the particular means by which or manner in which the control is exercised, that creates the fiduciary obligation."  *S. Pac. Co. v. Bogert*, 250 U.S. 483, 492 (1919).  Because the Michigan Supreme Court considers Delaware decisions persuasive, *Murphy*, 983 N.W.2d  at 363 n.33, and because there is no reason for Michigan to depart from more than a century of well-reasoned Supreme Court and Delaware authority, this Court has a duty to apply the law exactly as a state court would.  *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001).

18

control over the Bank, not the technicalities of *how* he exercised it, the Court must reject Seligman's argument.

Seligman also argues he could not have been in control of the Holding Company because he did not exercise control by dominating the board. Mot. at 21, PageID.476. But courts have recognized that assessing control is "highly contextualized" and there is "no magic formula to find control." *Pattern Energy*, 2021 WL 1812674, at *36. "It is impossible to identify or foresee all of the possible sources of influence that could contribute to a finding of actual control." *Id.* at *37. Some of the "many sources of influence and of control that could contribute to a finding of actual control include . . . relationships with key managers or advisors," "ownership of a significant equity stake," and "the ability to exercise outsized influence" as a "founder." *Id.* (internal quotation omitted).

Thus, a plaintiff need not allege control over a majority of the board to establish the defendant is a controlling shareholder. *See Firefighters' Pension Sys. v. Presidio, Inc.*, 251 A.3d 212, 287 (Del. Ch. 2021) ("It also is possible that a controller could cause a corporation or its unaffiliated stockholders to suffer harm by exercising control through means other than its director nominees."); *Voigt v. Metcalf*, No. 2018-0828-JTL, 2020 WL 614999, at *12 (Del. Ch. Feb. 10, 2020) ("[T]he right to designate directors (albeit less than a majority)" *may help establish* control.); *Basho Techs. Holdco B, LLC v. Georgetown Basho Invs., LLC*, No.

11802-VCL, 2018 WL 3326693, at *28 (Del. Ch. July 6, 2018) (control established where defendant could only designate two of seven board seats).  Furthermore, the plaintiff need not allege "control over the corporation's business and affairs in general," where, as here, the claim relates to "control over the corporation specifically for purposes of the challenged transaction." *Voigt*, 2020 WL 614999, at *11.

Here, the Complaint alleges a large confluence of factors—a significant equity stake, familial ties to nearly all other equity holders, founder status, entanglement in business decisions large and small, an intimate relationship with the admitted fraudster in charge of the ALP, and a practice of bullying and intimidating top executives and low-level employees—that resulted in Seligman controlling Sterling.  While Seligman did not designate a majority of the board, Seligman, through this confluence of factors, controlled "the key managers or advisors who play a critical role in providing directors with alternatives, providing information about the available options, and making recommendations as to what course to follow." *Voigt*, 2020 WL 614999, at *22.  Seligman was therefore able to exert actual control over Sterling in a manner that usurped the formal authority of the board and undermined credit policies that the Board supported. *See* Compl. ¶ 41, PageID.16 ("Seligman exerted pressure on Bank employees to originate

Advantage Loans with no regard for, and in violation of, . . . the Bank's new credit policies …..").

Reducing the analysis to a "magic formula" of counting board members, as Seligman urges, would lead to the absurd result that a person who usurps the authority of the board to control a corporation for his own benefit and at the corporation's expense could never be held to account for his misconduct, leaving the corporation without an effective remedy. *In re Pattern Energy*, 2021 WL 1812674, at *36 (holding finding of control is "highly fact-specific").

Seligman relies on out-of-context quotes from certain cases, but none supports his position.  Rather, these cases simply stand for the proposition that a minority shareholder cannot be held responsible for a discrete transaction specifically approved by a board that he did not control.  *Fenestra Inc. v. Gulf Am. Land Corp.*, 141 N.W.2d 36, 52-53 (Mich. 1966) (approval of merger); *Kearney v. Jandernoa*, 979 F. Supp. 576, 578 (W.D. Mich. 1997) (approval of secondary share offering); *Corwin v. KKR Fin. Holdings LLC*, 125 A.3d 304, 306 (Del. 2015) (approval of merger); *In re Morton's Rest. Grp., Inc. S'holders Litig.*, 74 A.3d 656, 661 (Del. Ch. 2013) (approval of merger).

These cases are of no help to Seligman because the Complaint does not seek to hold Seligman liable for conduct approved by a fully informed board.  The Complaint seeks to hold Seligman liable for conduct that *Seligman* caused the

corporation to engage in while keeping the true facts from the Board.  Compl. ¶ 1, PageID.2 (describing Seligman's "efforts to keep [his dishonest and reckless conduct] concealed"); *see also id.* ¶ 63, PageID.24.

Once Seligman assumed control over Sterling, he owed a fiduciary duty to act in Sterling's interest.  *Grand Traverse Band,*, 391 F. Supp. 3d at 716.  The Complaint alleges that Seligman did, in fact, exert control over Sterling, and therefore owed fiduciary duties to it.

### B.   Seligman breached his duties to Sterling

It is well-established that a controlling shareholder owes fiduciary duties to minority shareholders *and* the corporation itself.  *Salvadore v. Connor*, 276 N.W.2d. 485, 463 (Mich. Ct. App. 1978) ("It is beyond dispute that in Michigan, directors and officers of corporations are fiduciaries who owe a strict duty of good faith to the corporation which they serve. . . . *The same is true of majority shareholders . . . .*") (citation omitted) (emphasis added).  *See also Delman v. GigAcquisitions3, LLC*, No. 2021-0679-LWW, 2023 WL 29325, at *11 (Del. Ch. Jan. 4, 2023) ("*A controlling stockholder also owes fiduciary duties to the corporation* and its minority stockholders . . . .") (emphasis added).

Contrary to these bedrock principles, Seligman argues that a controlling shareholder owes a duty only "*as to the minority*" shareholders but not to the corporation itself.  Mot. at 26, PageID.481.  He further contends that he did not

breach any duty to the minority shareholders because they did not suffer any harm in their capacity as minority shareholders. *Id.*

Seligman is wrong as a matter of law: controlling shareholders owe a fiduciary duty to the corporation itself, and none of the cases he cites supports his argument.[6] For example, *Salvadore* holds that controlling shareholders, like directors, "owe a strict duty of good faith to the corporation which they serve." *Salvadore*, 267 N.W.2d. at 463. In *Fenestra*, the Court's analysis assumed that the controlling shareholder was required to act in "the interests of Fenestra [the corporation] and its other stockholders." 141 N.W.2d 36 at 51. The Court found no breach of duty only because the defendant, did not, in fact, act "only [with] self-interest in mind." *Id.* at 52.

Although *Veeser v. Robinson Hotel Co.*, 266 N.W. 54, 55-56 (Mich. 1936), and *Thompson v. Walker*, 234 N.W. 144, 147 (Mich. 1931), each state that a controlling shareholder owes a duty to the minority, neither case holds that a person who controls a corporation owes no fiduciary duty to it.

In short, it is black letter law that a controlling shareholder such as Seligman owes duties to the company. Further, Seligman does not dispute that, assuming he owed fiduciary duties to Sterling, Sterling has plausibly alleged that he breached

---

[6] He is also wrong factually because minority shareholders suffer when a corporation is forced to expend many millions of dollars to right a controlling shareholder's harms.

them.  Because Sterling plausibly alleges Seligman breached the duties he owed to Sterling, Seligman's motion to dismiss fails.

### III.  Sterling has stated a claim for unjust enrichment
#### A.  Seligman unjustly benefitted from the payments

"A claim for unjust enrichment is neither a tort nor a contract but rather an independent cause of action . . . to correct a defendant's unjust retention of a benefit owed to another."  *Wright v. Genessee Cnty.*, 934 N.W.2d 805, 807, 809-10 (Mich. 2019).  "The remedy for unjust enrichment is restitution."  *Id.* at 809.

To bring an unjust enrichment claim under Michigan law, Sterling need only allege that (1) Seligman received a benefit from Sterling and (2) an inequity resulted because Seligman retained the benefit.  *See PCA Mins., LLC v. Merit Energy Co.*, 725 F. App'x 342, 345 (6th Cir. 2018); *McCreary v. Shields*, 52 N.W.2d 853, 855 (Mich. 1952) (Unjust enrichment occurs when a person "has and retains money or benefits which in justice and equity belong to another.").  Sterling has done so, alleging that (i) Sterling has paid inflated dividends to Seligman and made other undeserved payments to Seligman-related entities, and (ii) it would be inequitable for Seligman and related entities to retain those monies.

*First*, the Complaint alleges that Sterling paid Seligman dividend payments as a result of Seligman's wrongdoing.  In particular, the Board approved dividends at a time when Seligman's "dishonest and reckless design of and control over the ALP . . . significantly inflated Sterling's proceeds and valuations."  Compl. ¶ 74,

PageID.27.  The managers Seligman controlled "actively conceal[ed] those risks from the Bank's independent Board members," leading the Board to issue dividend payments it would not have issued if it knew the truth about Sterling's precarious position.  *Id.* ¶ 63, PageID.24.  Seligman exacerbated the problem by causing Sterling to issue subordinated debt—purportedly to supplement the Bank's capital—but in reality the money was cycled out of the Bank, to the Holding Company, and then to Seligman's and his family's pockets as additional dividends. *Id.* ¶ 91, PageID.34.

The Complaint alleges it would be inequitable for Seligman to retain these payments.  When Seligman's wrongdoing came to light, Sterling was left to suffer tens-of-millions of dollars' worth of harm, while Seligman kept every penny of his ill-gotten gains.  *Id.* ¶¶ 75-84, PageID.28-32.

*Second*, the Complaint alleges that Seligman caused Sterling to make numerous other payments for Seligman's benefit, including, for example, $4,525,000 to the Seligman Family Foundation from 2014 to 2020; $1,698,663 to the other nominal defendant entities affiliated with and controlled by him and $174,957 directly to Seligman from 2013 through 2020;[7] and other sums specifically identified in the Complaint.  Compl. ¶¶ 87-89, PageID.33-34.  It is

---

[7] Defendants' motion contains no argument that Sterling has not stated a claim for the $174,957 paid directly to Seligman from 2013 to 2020.  Defendants' motion should be denied with respect to these payments for this reason alone.

inequitable for Seligman to retain these payments that improperly benefited him personally at the expense of Sterling.  Compl. ¶¶ 88, 92, PageID.33, 35.  Because Sterling has alleged Seligman received a benefit and a resulting inequity, the Court must deny the motion.

### B.    Seligman's arguments that he was not unjustly enriched by the dividend payments have no merit

Seligman contends he (and the Nominal Defendants) could not have been unjustly enriched by dividends because stockholders have a legal, contractual right to authorized dividends.  Mot. at 30, PageID.485.  Shareholders do not have a legal or contractual right to dividends; the declaration of dividends is reserved to the discretion of the board.  Mot., Ex. E at Sec. 2.6 (board's authority to declare dividends is *discretionary*); *Baron v. Allied Artists Pictures Corp.*, 337 A.2d 653, 658-59 (Del. Ch. 1975) ("The determination as to when and in what amounts a corporation may *prudently distribute* its assets by way of dividends rests in the *honest discretion* of the directors in the performance of this fiduciary duty." (emphases added)); *Dodge v. Ford Motor Co.*, 170 N.W. 668, 682 (Mich. 1919) ("The board of directors declare the dividends, and it is for the directors, and not the stockholders, to determine whether or not a dividend shall be declared." (quoting Cook on Corporations (7th Ed.) § 545)).

Moreover, Seligman's argument that he had a legal entitlement to "authorized" dividends assumes, contrary to the allegations in the Complaint, that

dividends were in fact properly authorized.   The Complaint alleges that, because of Seligman's concealment, the board was not fully informed of the true state of Sterling's affairs when the board declared dividends.

In any event, even if Seligman had a legal right to authorized dividends, binding Michigan law holds that such a right would not shield him from a claim for unjust enrichment:

> [U]njust enrichment requires the consideration of both legal *and* equitable factors. Thus, even though by operation of *law* defendant received the property "absolutely," he is still unjustly enriched if he is obligated by *equity* to make restitution.

*Tkachik v. Mandeville*, 790 N.W.2d 260, 266 (Mich. 2010).[8]

Seligman relies on the *Coleman* case, but it does not hold, as Seligman contends, that a defendant who had a "right" to a benefit is categorically immune from an unjust enrichment claim.  *See* Mot. at 29, PageID.484 (quoting *Coleman v. Ditech Fin.*, No. 16-cv-11124, 2016 WL 3522556, at *5 (E.D. Mich. June 24, 2016) (Levy, J.).  *Coleman* presents a very different fact pattern than that found here.  In *Coleman*, a mortgage lender exercised its contractual right to foreclose on a property where the borrower had defaulted on his loan; the lender followed all laws concerning the foreclosure process, and the lender engaged in no "misconduct

---

[8] Seligman relies on *Tkachik* for the proposition that, in an unjust enrichment suit, mechanical enforcement of "legal" rights trumps "principles of natural justice," but this is precisely the point *Tkachik* rejected.  Mot. at 31, PageID.486.

or impropriety." *Coleman,* 2016 WL 3522556, at *4-5.  Seligman, by contrast, engaged in extreme misconduct in operating the ALP to benefit himself at the expense of Sterling, and Sterling granted him no contractual right to recklessly operate the ALP for his sole benefit and to Sterling's detriment.

Similarly, in *Farish,* the court dismissed an unjust enrichment claim when the government was entitled to the funds at issue, and only the methods it used to collect those funds was wrongful.  *Farish v. Dep't of Talent & Econ. Dev*, 971 N.W.2d 1, 14  (Mich. Ct. App. 2021).  That is not the case here:  Seligman engaged in wrongful conduct to enrich himself and has no "right" to dividends that he received because of his own wrongdoing.[9]

---

[9] The other cases Seligman cites are also inapposite. *Brint Elec., Inc. v. TG4USA, Inc.*, No. 17-CV-10187, 2017 WL 9718993, at *2 (E.D. Mich. July 14, 2017), holds a property owner who pays a contractor for a subcontractor's work is not required to "pay twice" if the contractor fails to pay a subcontractor, unless the property owner misled, defrauded, or induced a change in the subcontractor's position.  *Brint* is inapposite because Seligman is not being asked to "pay twice" for the same service, and he engaged in severe, deceptive misconduct that caused Sterling to change its position.  Similarly, *Reyes-Trujillo v. Four Star Greenhouse, Inc.*, 513 F. Supp. 3d 761, 800 (E.D. Mich. 2021), holds that "where a third person benefits from a contract entered into between two other persons, *in the absence of some misleading act by the third person*, the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third person."  Sterling does not allege Seligman benefited from a contract between Sterling and a third person who failed to perform his contractual duties to Sterling, and Sterling *does* allege that Seligman engaged in misleading acts.  Finally, *Michigan Med. Serv. v. Sharpe*, 339 Mich. 574, 577 (Mich. 1954), holds it is not unjust to enforce a contract "fairly and honestly arrived at beforehand."  Here, Sterling alleges the dividends were issued in circumstances that were neither fair nor honest.

Seligman also argues that he was not unjustly enriched because he did not "induce" the dividends or take "misleading" actions. Mot. at 30, PageID.485. The Complaint, which must be accepted as true for purposes of this motion, alleges just the opposite. The Complaint alleges the Board issued dividends based on an inflated valuation of Sterling, and that the valuation of the company was inflated because Seligman concealed wrongdoing in connection with the ALP. Compl. ¶ 92, PageID.35. Thus, Seligman's wrongdoing induced the issuance of dividends, and Seligman had no "right" to induce the Board to issue dividends based on a false impression of Sterling's position.[10]

Moreover, even though the Complaint plainly alleges Seligman engaged in misconduct, Sterling is not required to allege or prove that Seligman induced the payments or engaged in other misconduct because even benefits "passively

---

[10] Defendants also argue that Sterling has not made the requisite showing that Seligman was unjustly enriched by the inflated dividends that Seligman received following Sterling's issuance of subordinated debt because Sterling's allegation that he "caused" Sterling to issue the debt is conclusory. *See* Mot. at 31, PageID.486. But Rule 8 "does not require 'detailed factual allegations,'" it simply "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 at 555 (2007)). Sterling's detailed allegations, spanning 54 paragraphs (Compl. ¶¶ 21-74, PageID.10-28), explaining how Seligman "wielded control over [] all aspects of Sterling's affairs" (*id.* ¶ 21, PageID.10), meets and exceeds this minimal pleading standard. Additionally, Seligman's off-hand remark that the allegation related to subordinated debt is time-barred fails because (1) it is not sufficiently argued to be preserved; (2) unjust enrichment is subject to a six-year statute of limitation; and (3) the claim did not accrue until Seligman received the benefit in the form of dividends issued from 2015 to 2020.

received" are subject to restitution where justice so requires. *Reisenfeld & Co. v. Network Grp., Inc.*, 277 F.3d 856, 861 (6th Cir. 2002); *see also Estate of McCallum*, 395 N.W.2d 258, 261 (Mich. Ct. App. 1986) (unjust enrichment appropriate where "the benefit was conferred under circumstances making such action necessary for the protection of the interests of the other or of third persons"). Michigan law requires only that Sterling allege that (1) Seligman received a benefit from Sterling and (2) an inequity resulted because Seligman retained the benefit. *See PCA Mins.*, 725 F. App'x at 345. Sterling has done so.

> ### C. Seligman's arguments that he was not unjustly enriched by payments from Sterling to the Seligman-affiliated and -controlled trusts and entities fall short, too

Seligman argues he was not unjustly enriched by payments to the nominal defendants because he did not wrongfully or fraudulently induce the payments to them. Mot. at 32, PageID.487. Seligman is wrong on the law and the facts.

On the law, again, Sterling is not required to allege inducement or wrongful conduct, it need only allege receipt of a benefit and resulting inequity. *See supra* Sec. III.B.. It has done so. *See supra* Sec. III.A.

On the facts, Sterling's Complaint is replete with allegations that Seligman controlled the Bank's top-level management, who represented his interests and executed his will even if it was detrimental to Sterling. Compl. ¶¶ 14, 20, 26, 85-86, 88, 92, 99, PageID.7, 9, 11, 32-33, 35,36. Thus, Sterling has alleged Seligman

wrongfully caused Sterling to make the payments through his control over the Bank's management.

Seligman also argues Sterling must pierce the corporate veil to recover benefits that flowed to him through the nominal defendants.  Mot. at 34, PageID.489. This argument fails because "[n]umerous cases have held that a benefit may be unjustly obtained by a defendant through an intermediary, especially if there is some wrongdoing on the defendant's part." *Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662, 670 (E.D. Mich. 2008).  That is what Sterling alleges happened here.

Indeed, it is more than a reasonable inference from the Complaint's allegations that the nominal defendants hold the ill-gotten funds as Seligman's agent.  "[A]n agency relationship may arise when there is a manifestation by the principal that the agent may act on his account. . . . And the main test for agency is 'whether the principal has a right to control the actions of the agent.'" *Jonna v. Latinum*, No. 22-10208, 2022 WL 2960130, at *6 (E.D. Mich. July 26, 2022) (quoting *Meretta v. Peach*, 491 N.W.2d 278, 280 (Mich. 1992)).  "[I]t is generally recognized that an agent does not take title to funds or property entrusted to him by his principal." *In re Newpower*, 233 F.3d 922, 933 (6th Cir. 2000).

Here, the Complaint plausibly alleges that "[t]he Nominal Defendants are affiliated with and controlled by Seligman."  Compl. ¶ 10, PageID.6.  These

allegations are sufficient to permit the Court to entertain a claim to order the nominal defendants to disgorge ill-gotten gains they are holding on Seligman's behalf. *See SEC v. George*, 426 F.3d 786, 798 (6th Cir. 2005) (affirming order requiring nominal defendant to disgorge ill-gotten funds transferred to her by wrongdoer). None of the veil-piercing cases that Seligman relies on is on point because none of them involves allegations that a nominal defendant held ill-gotten funds as an agent of their principal. *See* Mot. at 33-35, PageID.488-90.

Lastly, Seligman argues that Sterling has not plausibly alleged that Seligman benefitted from Sterling's payments to the nominal defendants because the Complaint "provides zero detail" about "the nature and purposes" of the payments to the Nominal Defendants, or "the contracts and agreements pursuant to which they were paid, or Seligman's involvement in these transactions." Mot. at 32, PageID.487. But a complaint needs "only enough facts to suggest that discovery may reveal evidence of illegality, even if the likelihood of finding such evidence is remote," Fed. R. Civ. P. 12(b)(6); it "does not need detailed factual allegations'" as Seligman suggests. *Twombly*, 550 U.S. at 555-56. Sterling's Complaint easily passes this low threshold, and its unjust enrichment claim should not be dismissed.

### D. Sterling's unjust enrichment claim is not governed by any express contract

Seligman argues that Sterling's Bylaws and the Board's issuance of dividends are express contracts that bar an unjust enrichment claim. Mot. at 35-36,

PageID.490-91.  This argument is without merit.  The express-contract exception that Seligman cites applies only to unjust enrichment claims that are based on a quasi-contract theory of recovery, under the rationale that courts should not rewrite the parties' bargains when an express agreement between them resolves their dispute.  *See Lee v. Cincinnati Cap. Corp.*, 434 F. Supp. 3d 601, 614 (E.D. Mich. 2020).  Because Sterling's claim for unjust enrichment is not based on a quasi-contract theory of recovery, the express-contract exception does not apply.

The Michigan  Supreme Court has expressly stated that "not all unjust enrichment is quasi-contract."  *Wright*, 504 Mich. at 422.  Under the quasi-contract branch of unjust enrichment, courts use unjust enrichment to imply a contract between parties who have failed to actually enter into one.  *See Wright*, 504 Mich. at 421 (describing quasi-contract actions of money had and received, money paid, quantum meruit, and quantum valebat).  But, when a court instead orders restitution to prevent a wrongdoer from retaining the benefit of his wrongs—rather than to impose a contract implied at law—the plaintiff's unjust enrichment claim is not based on a quasi-contract theory of recovery, and an express contract will not bar that claim.  *Lee*, 434 F. Supp. 3d at 615 (holding express contract did not bar claim that "seeks restitution for the improper and illegal collection of monies by the Defendant"); *Young v. VanderMeer*, No. 349093, 2021 WL 744532, at *9

33

(Mich. Ct. App. Feb. 25, 2021) (holding express contract did not bar claim where defendants "were unjustly enriched by the diversion of business opportunities").

Here, Sterling does not allege it mistakenly rendered a service or delivered a good to Seligman without entering into an agreement, requiring imposition of a quasi-contract. Instead, Sterling alleges Seligman engaged in reckless and self-interested behavior that unjustly enriched Seligman at Sterling's expense. The express contract rule thus has no application to Sterling's unjust enrichment claim. *Lee*, 434 F. Supp. at 615.

Moreover, even if Sterling's unjust enrichment claim could be viewed as one based on a quasi-contract theory of recovery, the express-contract exception still would not bar Sterling's claim because there is no express contract that governs the dispute here. Where a contract has some relation to the subject matter of the claim, courts will not bar an unjust enrichment claim where the contract fails to provide specific guidance on the remedy or does not fully cover the dispute. *Covenant Med. Ctr., Inc. v. Bagley*, No. 221CV11221, 2022 WL 3648176, at *4 (E.D. Mich. Aug. 24, 2022) ("Though this provision references Dr. Bagley's compensation, it fails to provide any guidance regarding Covenant's protocol for resolving overpayments nor does any other provision in the contract."); *Peabody v. DiMeglio*, 856 N.W.2d 245, 251 (Mich. Ct. App. 2014) ("Plaintiff alleges not only that the estate owes her for the decedent's breach, but that Marta was unjustly

enriched when she retained the funds from the sale of the Colorado property. This is a purely equitable claim that is not covered by any express contract of the parties."). Here, neither the Bylaws nor any other contract document provides the Court any specific guidance on how it should redress Seligman's wrongdoing. Accordingly, the express-contract exception does not apply.

Furthermore, with respect to the payments to Nominal Defendants, "any contracts or other consensual agreements underlying those payments" from Sterling to the Nominal Defendants are not express agreements between *Seligman and Sterling* and do not provide Sterling a remedy to recoup the payments that Seligman ultimately, and unjustly, received or will receive for his own benefit.

Finally, Seligman's argument that Sterling must allege the lack of an adequate remedy at law fails. Sterling's claim against Seligman is for money damages and is therefore a *legal* claim for unjust enrichment, not an equitable one requiring such an allegation. *Wright*, 504 Mich. at 421 ("[R]estitution claims for money are usually claims 'at law.'") (internal quotation omitted). In any event, Seligman does not identify any other remedy at law for his and the nominal defendants' unjust retention of payments for his benefit. Accordingly, whether the claim for unjust enrichment is legal or equitable in nature, it is adequately pled.

## IV.   <u>Sterling properly named the nominal defendants</u>

A nominal defendant "may 'be joined to aid the recovery of relief'" from the main defendant.  *George*, 426 F.3d at 798 (6th Cir. 2005) (quoting *SEC v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991)).  When the dispute between the plaintiff and the main defendant is resolved, "[t]he court needs to order the nominal defendant to turn over funds to the prevailing party." *Cherif,* 933 F.2d at 414.  In a typical case, "the nominal defendant is a 'trustee, agent, or depositary,' who has possession of the funds which are the subject of litigation" and who is "joined purely as a means of facilitating collection."  *Id.* (citation omitted).   Thus, a nominal defendant "has no ownership interest in the property which is the subject of litigation."  *George*, 426 F.3d at 798.   Under these principles, Sterling properly named the nominal non-trust defendants for its unjust enrichment claim.[11]

As noted above, Sterling has alleged that the nominal non-trust defendants possess funds as Seligman's agent that Seligman caused Sterling to pay for Seligman's personal benefit.  *Supra* Secs. III.A, C.  Thus, Sterling seeks only funds that the nominal defendants hold in a "subordinate or possessory capacity" for the benefit of Seligman.  *Cherif*, 933 F.2d at 414 (quoting *Colman v. Shimer*, 163 F.Supp. 347, 351 (W.D. Mich.1958)).

---

[11] Notably, Defendants do not argue that nominal defendant Scott J. Seligman Revocable Living Trust has not been properly named, and thus this nominal defendant should not be dismissed from the suit in any circumstance.

If Defendants' argument that the nominal non-trust defendants "are operating corporations and other legal entities, with other owners and interests," Mot. at 35, PageID.490, were enough to dismiss a nominal defendant from a suit before discovery, "individuals and institutions holding funds on behalf of wrongdoers would be able to avoid disgorgement simply by stating a claim of ownership, however specious." *Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch, Inc*., 276 F.3d 187, 192 (4th Cir. 2002).[12]

## V.     **The wrongful conduct rule does not apply here**

Defendants contend that Sterling's claims are barred by Michigan's wrongful conduct rule.  Mot. at 37-40, PageID.492-95.  That is incorrect.

First, the wrongful conduct rule is an affirmative defense and therefore "does not rebut a plaintiff's *prima facie* case." *Great Lakes Comnet*, 588 B.R. at 12.  Thus, for a defendant to meet its burden of establishing that the rule applies at the motion to dismiss stage, the defense must be "apparent on the face of the complaint." *Id.*  Defendants tacitly acknowledge that the defense is *not* apparent on the face of Sterling's complaint, and that further discovery is required, by

---

[12] Defendants state that they incorporate by reference the arguments made in the Motion to Dismiss by Nominal Defendants K.I.S.S. Dynasty Trust No. 9, Scott J. Seligman 1993 Long Term Irrevocable Dynasty Trust, Scott J. Seligman 1993 Irrevocable Dynasty, Trust, and Joshua James Seligman Irrevocable Trust No. 1. Mot. at 35 n.11, PageID.490.  Sterling is filing on this date a separate opposition to the nominal trust defendants' motion to dismiss, and respectfully refers the Court to that filing for additional argument relating to the nominal defendants.

arguing that if the litigation were to proceed, Defendants supposedly would show that any fault for Sterling's claims lies with Sterling.  Mot. at 40, PageID.495.  For this reason alone, the Court should not apply the wrongful conduct rule to dismiss Sterling's Complaint.  *See Dobronski v. TBI, Inc.*, 2021 WL 1585203, at *3 (E.D. Mich. Mar. 11, 2021) (denying motion to dismiss on basis of wrongful conduct rule because the defense "require[s] factual development and analysis that is not appropriate in a motion to dismiss").

Second, the wrongful conduct rule does not defeat the claims here because "a plaintiff may still seek recovery against the defendant if [as here] the defendant's culpability is greater than the plaintiff's culpability for the injuries." *Orzel by Orzel v. Scott Drug Co.*, 537 N.W.2d 208, 213.  The rationale for the wrongful conduct rule is that "as between parties in pari delicto*, that is, equally in the wrong,* the law will not lend itself to afford relief to one as against the other, but will leave them as it finds them," *Id.* at 212-13. (quoting 1A CJS, Actions, § 29, p. 388) (emphasis added).  It is this rationale that precludes dismissing Sterling's Complaint.  Construing the Complaint's allegations in the light most favorable to Sterling (as the Court must), Seligman's culpability for Sterling's injuries is significantly greater than Sterling's: any violation of law by Sterling or its employees was *because* of Seligman.  *Id.* at 213; *see, e.g.*, Compl. ¶¶ 42-63, 75-84, PageID.16-24, 28-32.

If Defendants were right that the wrongful conduct rule could be applied to the motion-to-dismiss stage to bar claims like the one here, a person could never be held responsible for wielding domination and control over a company to cause that company and its employees to violate criminal law. But, the wrongful conduct rule exists so that wrongdoers cannot profit from their illegal acts, *Orzel*, 537 N.W.2d. at 559, and dismissing Sterling's Complaint would allow Seligman to do just that, shifting responsibility for his actions to Sterling and its minority shareholders as he has tried to do for the last three years. The Court should not endorse Defendants' distorted reading of the wrongful conduct rule.

Moreover, Seligman's "wrongful conduct" defense is predicated on his argument that the Board was "responsible" for the wrongdoing at Sterling, and that "Seligman is [merely] the fall guy for their own failings." Mot. at 1, PageID.456. Seligman describes the allegations in the Complaint as an "alternate history of the ALP" (*id.*) that, according to him, is "fantastical" (*id.* at 2, PageID.457) and "preposterous" (*id.* at 3, PageID.458) in seeking to make Seligman the "scapegoat for [Sterling's] self-inflicted injuries" (*id.* at 38, PageID.493). None of these characterizations is supported by reference to the allegations in the Complaint. To the contrary, the Complaint alleges in great factual detail that Seligman is responsible for the wrongdoing that harmed Sterling, and the Court, on a motion to dismiss, may not give credence to argument in a brief over the allegations of the

39

Complaint. *George S. Hofmesiter Fam. Trust Dated June 21, 1991 v. FGH Indus., LLC*, No. 06-CV-13984-DT, 2008 WL 1809205, at *1 (E.D. Mich. Apr. 21, 2008) ("[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations.").[13]

## **CONCLUSION**

For the foregoing reasons, Sterling respectfully requests that the Court deny the Motion to Dismiss by Defendant Scott Seligman ("Seligman") and Nominal Defendants Scott J. Seligman Revocable Living Trust, Seligman Family Foundation, 311 California LP/Tax KISS LP Co, Presidential Aviation, Inc., SM Farthington, Ltd. LLC, Seligman & Associates, Inc., and Seligman Administrative Office.

Dated:  March 13, 2023

By:  /s/ Matthew J. Lund
Robert S. Hertzberg (P30261)
Matthew J. Lund (P48632)
Troutman Pepper Hamilton Sanders LLP
4000 Town Center, Suite 1800
Southfield, MI 48075
Telephone: 248-359-7370
robert.hertzberg@troutman.com
matthew.lund@troutman.com

---

[13] Seligman's argument that the wrongful conduct of the Bank employees who acted under his control should be imputed to the Bank fails because these employees, in carrying out Seligman's commands, served Seligman's interests, not Sterling's.  *In re NM Holdings Co., LLC*, 622 F.3d 613, 620 (6th Cir. 2010) (holding court will not impute actions "adverse to the corporation's interests"). Accepting Seligman's argument would lead to the absurd result that any person who breached his fiduciary duties to a corporation would be immune from liability, so long as he found a corporate employee to conspire or aid and abet his violations.

David B. Bergman
Jayce L. Born
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Telephone: 202-942-5000
david.bergman@arnoldporter.com
jayce.born@arnoldporter.com

Oscar Ramallo
Arnold & Porter Kaye Scholer LLP
777 South Figueroa Street, 44th
Floor
Los Angeles, CA 90017-5844
Telephone: 213-243-4000
oscar.ramallo@arnoldporter.com

Dated: March 13, 2023

*Counsel for Plaintiffs Sterling Bank and Trust, F.S.B. and Sterling Bancorp, Inc*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Sterling Bank and Trust, F.S.B.
AND Sterling Bancorp, Inc.,

        Plaintiffs,

v.

Scott Seligman,

        Defendant,

And

K.I.S.S. Dynasty Trust No. 9, Scott J.
Seligman 1993 Long Term Irrevocable
Dynasty Trust, Scott J. Seligman 1993
Irrevocable Dynasty Trust, Scott J.
Seligman Revocable Living Trust, Joshua
James Seligman Irrevocable Trust No. 1,
Seligman Family Foundation, 311
California LP/tax Kiss LP CO, Presidential
Aviation, Inc., SM Farthington, LTD LLC,
Seligman & Associates, Inc., AND
Seligman Administrative Office

        Nominal Defendants.

Civil Action No. 5:22-cv-12398

**Hon. Judith E. Levy**

**Magistrate Judge Elizabeth A.
Stafford**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 13, 2023, the foregoing document was electronically filed with the U.S. District Court, Eastern District of Michigan, and notice will be sent by operation of the Court's electronic filing system to all ECF participants.

                           */s/ Matthew J. Lund*
                           Matthew J. Lund