## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Sterling Bank and Trust FSB
AND Sterling Bancorp, Inc.,

                  Plaintiffs,

   v.

Scott Seligman,

                  Defendant,

and

K.I.S.S. Dynasty Trust No. 9, Scott J.
Seligman 1993 Long Term Irrevocable
Dynasty Trust, Scott J. Seligman 1993
Irrevocable Dynasty Trust, Scott J.
Seligman Revocable Living Trust, Joshua
James Seligman Irrevocable Trust No. 1,
Seligman Family Foundation, 311
California LP/tax Kiss LP CO, Presidential
Aviation, Inc., SM Farthington, LTD LLC,
Seligman & Associates, Inc., AND
Seligman Administrative Office,

                  Nominal
                  Defendants.

Case No. 5:22-cv-12398-JEL-EAS

## REPLY BRIEF IN FURTHER SUPPORT OF MOTION
## TO DISMISS THE COMPLAINT BY DEFENDANT SCOTT SELIGMAN
## AND NOMINAL DEFENDANTS SCOTT J. SELIGMAN REVOCABLE
## LIVING TRUST, SELIGMAN FAMILY FOUNDATION, 311 CALIFORNIA
## LP/TAX KISS LP CO, PRESIDENTIAL AVIATION, INC., SM
## FARTHINGTON, LTD LLC, SELIGMAN & ASSOCIATES, INC., AND
## <u>SELIGMAN ADMINISTRATIVE OFFICE</u>

## **CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

1.

*Baks v. Moroun*, 576 N.W.2d 413 (Mich. Ct. App. 1998)

*Buttonwood Tree Value Partners, L.P. v. R.L. Polk & Co.*, No. 9250-VCG, 2017 WL 3172722  (Del. Ch. July 24, 2017)

*Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345 (Del. 1993)

*Corwin v. KKR Fin. Holdings LLC*, 125 A.3d 304 (Del. 2015)

*Fenestra Inc. v. Gulf Am. Land Corp.*, 141 N.W.2d 36 (Mich. 1966)

*Gilmore v. First Am. Title Ins. Co.*, No. 07-12123, 2009 WL 2960703 (E.D. Mich. Sept. 11, 2009)

*Grand Traverse Band of Ottawa & Chippewa Indians v. Blue Cross & Blue Shield of Mich.*, 391 F. Supp. 3d 706 (E.D. Mich. 2019)

*Humphrey v. U.S. Att'y Gen.'s Off.*, 279 F. App'x 328 (6th Cir. 2008)

*New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th 393 (6th Cir. 2022)

*Olenik v. Lodzinski*, 208 A.3d 704 (Del. 2019)

*PCA Minerals, LLC v. Merit Energy Co.*, 725 F. App'x 342 (6th Cir. 2018).

*Seebacher v. Fitzgerald, Hodgman, Cawthorne & King, P.C.*, 449 N.W.2d 673 (Mich. Ct. App. 1989)

2.

*AFT Mich. v. Michigan*, 846 N.W.2d 583 (Mich. Ct. App. 2014)

*Comm'r v. Bollinger*, 485 U.S. 340 (1988)

*Michigan Med. Serv. v. Sharpe*, 64 N.W.2d 713 (Mich. 1954)

*Reyes-Trujillo v. Four Star Greenhouse, Inc.*, 513 F. Supp. 3d 761 (E.D. Mich. 2021)

3.

*Stopera v. DiMarco*, 554 N.W.2d 379 (Mich. Ct. App. 1996)

i

## **TABLE OF CONTENTS**

Page

INTRODUCTION ...............................................................................................1

ARGUMENT ......................................................................................................2

I.  THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH
    OF FIDUCIARY DUTY ..........................................................................2

    A.  Plaintiffs' Claim is Time-Barred Under Every Possible
        Limitations Period .............................................................................3

        1.  The Applicable Two-Year Period Bars Plaintiffs' Claim...........3

        2.  Plaintiffs' Preferred Three-Year Period Also Bars Their
            Claim .....................................................................................5

    B.  Seligman Was Not a "Controlling Shareholder" ..................................7

        1.  Seligman Was Not a Majority Shareholder ...............................7

        2.  Seligman Did Not Control the Board ........................................9

        3.  Plaintiffs' Concealment Theory Is Legally Insufficient
            And Inadequately Pleaded ......................................................11

II. THE COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST
    ENRICHMENT ......................................................................................13

    A.  There is Nothing "Unjust" About a Shareholder's Receipt of
        Dividends...........................................................................................13

    B.  Plaintiffs Cannot Avoid the Parties' Express Agreement
        Entitling Seligman to Dividends Declared by Sterling's Board .........15

    C.  The Complaint Does Not Allege that the Payments to the
        Nominal Non-Trust Defendants Benefited Seligman .........................17

III. THE WRONGFUL-CONDUCT RULE BARS THIS LAWSUIT...............19

CONCLUSION ...................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AFT Mich. v. Michigan*,
    846 N.W.2d 583 (Mich. Ct. App. 2014) ............................................................14

*Basho Techs. Holdco B, LLC v. Georgetown Basho Invs., LLC*,
    No. CV 11802-VCL, 2018 WL 3326693 (Del. Ch. July 6, 2018) ....................11

*Berlin v. Emerald Partners*,
    552 A.2d 482 (Del. 1988) ..................................................................................8

*Brown v. Gojcaj Foods, Inc.*,
    No. 09-14537, 2011 WL 1980533 (E.D. Mich. May 20, 2011) ..........................7

*Buttonwood Tree Value Partners, L.P. v. R.L. Polk & Co.*,
    No. 9250-VCG, 2017 WL 3172722 (Del. Ch. July 24, 2017) ........................... 8

*Cede & Co. v. Technicolor, Inc.*,
    634 A.2d 345 (Del. 1993) ................................................................................12

*Comm'r v. Bollinger*,
    485 U.S. 340 (1988) .........................................................................................18

*Cosby v. Cosby*,
    750 N.E.2d 1207 (Ohio Ct. App 2001) ............................................................15

*Estes v. Idea Eng'g & Fabricating, Inc.*,
    649 N.W.2d 84 (Mich. Ct. App. 2002) ..............................................................5

*Fenestra Inc. v. Gulf Am. Land Corp.*,
    141 N.W.2d 36 (Mich. 1966) ..................................................................9, 10, 11

*Gilmore v. First Am. Title Ins. Co.*,
    No. 07-12123, 2009 WL 2960703 (E.D. Mich. Sept. 11, 2009) ......................12

*Grand Traverse Band of Ottawa & Chippewa Indians v. Blue Cross &
    Blue Shield of Mich.*,
    391 F. Supp. 3d 706 (E.D. Mich. 2019) (Levy, J.) .............................................3

*Gulfside Casino P'ship v. Churchill Downs Inc.*,
    861 F. App'x 39 (6th Cir. 2021) ...........................................................................9

*Stringwell v. Ann Arbor Pub. Sch.*,
    No. 264252, 2006 WL 2355492 (Mich. Ct. App. Aug. 15, 2006) ....................18

*Lee v. Cincinnati Cap. Corp.*,
    434 F. Supp. 3d 601 (E.D. Mich. 2020) ............................................................16

*Michigan Med. Serv. v. Sharpe*,
    64 N.W.2d 713 (Mich. 1954)..............................................................................15

*Miller v. Laidlaw & Co. (UK)*,
    No. 11-12086, 2012 WL 1068705 (E.D. Mich. Mar. 29, 2012)..........................3

*New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*,
    44 F.4th 393 (6th Cir. 2022) .............................................................................12

*Nolan v. Detroit Edison Co.*,
    991 F.3d 697 (6th Cir. 2021) ..............................................................................9

*Olenik v. Lodzinski*,
    208 A.3d 704 (Del. 2019) .........................................................................9, 10, 11

*In re Pattern Energy Grp. Inc. Stockholders Litig.*,
    No. 2020-cv-0357-MTZ, 2021 WL 1812674 (Del. Ch. May 6,
    2021) ..................................................................................................................11

*PCA Minerals, LLC v. Merit Energy Co.*,
    725 F. App'x 342 (6th Cir. 2018) ........................................................................4

*Scalici v. Bank One, NA*,
    Nos. 254632–34, 2005 WL 2291732 (Mich. Ct. App. Sept. 20,
    2005) ..................................................................................................................20

*Seebacher v. Fitzgerald, Hodgman, Cawthorne & King, P.C.*,
    449 N.W.2d 673 (Mich. Ct. App. 1989)..............................................................4

*Stopera v. DiMarco*,
    554 N.W.2d 379 (Mich. Ct. App. 1996)............................................................20

*Wright v. Genesee Cnty.*,
    934 N.W.2d 805 (Mich. 2019)...........................................................................14

**Statutes**

MCL § 450.1489 ...................................................................................5

MCL § 450.1501 ...................................................................................9

MCL § 450.1531 ...................................................................................9

MCL § 450.1535 ...................................................................................9

MCL § 450.1541a .................................................................................4

**Other Authorities**

*$69M Securities Fraud*, U.S. Dep't of Justice (March 15, 2023),
    https://www.justice.gov/opa/pr/sterling-bancorp-inc-plead-guilty-
    69m-securities-fraud ......................................................................19

OCC Report of Examination, March 31, 2018… ..................................6

Rule 9(b)..............................................................................................12

Rule 12(b)(6).......................................................................................19

Rule 21 ................................................................................................19

**INTRODUCTION**

This untimely lawsuit is an exercise in gaslighting. Plaintiffs are trying to blame Scott Seligman for the Bank's ALP-related woes, making him the fall guy for claims asserted against Plaintiffs—as a result of *their* actions and inactions—by federal regulators and civil plaintiffs. So far, Plaintiffs have paid (or agreed to pay) tens of millions of dollars in penalties and damages for their own misconduct. Yet, Plaintiffs ignore the most important question exposed by the Complaint: "*Where Was the Board?*" *See* Defs.' Mot. to Dismiss ("Mot."), ECF No. 26, PageID.464.

Plaintiffs do not dispute that their common Board of Directors was responsible for overseeing the ALP and ensuring that the Bank complied with federal laws. *See id.* at PageID.456-457. As a result, allowing Plaintiffs to maintain this suit against Seligman would upend one of the most fundamental principles of corporate law— namely, that *the Board* has ultimate authority over, and responsibility for, the operation of both Sterling and the Bank. It also would legitimize the Board's self-dealing behavior: The Board hired outside counsel to conduct an investigation that conveniently absolved the Board of responsibility; the Board (including its Chairman, who is also a corporate officer) then allowed and approved guilty pleas and settlements by corporate executives and the *corporation itself*; and then the Board initiated this lawsuit, prosecuted by the same counsel that conducted the investigation, in an effort to lay blame on Seligman. Plaintiffs apparently hope that

by larding up the Complaint with salacious (but irrelevant) details, they can deflect attention from their own misconduct. But the law does not allow a Board of Directors to shift the responsibility for its own defalcations to a single individual like this.

The Complaint *does not allege* that Seligman controlled the Board. To the contrary, Plaintiffs now *admit* that Seligman had no authority to "exercise significant influence over, or participate (other than in an advisory capacity) in, major policy-making decisions of the board." Pls.' Resp. Br. in Opp. to Mot. to Dismiss ("Opp."), ECF No. 36, PageID.926. While Seligman's motion assumes the truth of the well-pleaded allegations in the Complaint (even if completely false), the omission of any allegation that Seligman controlled the Board is fatal to both of Plaintiffs' causes of action. Plaintiffs cannot state a claim for breach of fiduciary duty under a "controlling shareholder" theory, nor claim any "unjust enrichment," as a matter of law.

**ARGUMENT**

**I.   THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY**

The cases cited by Plaintiffs identify only one fiduciary duty owed by controlling shareholders: "good faith." Opp. at PageID.939 (citing *Salvadore v. Connor*, 276 N.W.2d 458, 463 (Mich. Ct. App. 1978)). That duty requires a controlling shareholder to refrain from pursuing its interests to the detriment of *other shareholders*—a theory that Plaintiffs do not allege or pursue. *Compare* Mot. at

PageID.480-482, *with* Opp. at PageID.939-940. That is reason enough for dismissal of this claim, and there are many more.

### A.   Plaintiffs' Claim is Time-Barred Under Either Limitations Period

The parties agreed to toll the statute of limitations as of December 7, 2021. Thus, the breach of fiduciary duty claim is untimely if Plaintiffs were on notice of the facts underlying that claim before December 7, 2019 (if the applicable period is two years) or December 7, 2018 (if it is three years). The Complaint shows that Plaintiffs were on notice by March 2018, and thus the claim is untimely under either available period. Accordingly, the Court should dismiss their claim with prejudice. *See, e.g.*, *Grand Traverse Band of Ottawa & Chippewa Indians v. Blue Cross & Blue Shield of Mich.*, 391 F. Supp. 3d 706, 717 (E.D. Mich. 2019) (Levy, J.) (dismissing time-barred breach of fiduciary duty claim); *Miller v. Laidlaw & Co. (UK)*, No. 11-12086, 2012 WL 1068705, at *13-14 (E.D. Mich. Mar. 29, 2012) (same).

#### 1.   The Applicable Two-Year Period Bars Plaintiffs' Claim

Plaintiffs do not dispute that their claim is untimely under the two-year period applicable to statutory claims for breach of fiduciary duty; instead, they insist that (as "master[s] of [their] complaint") they were entitled to bring their claim under the common law rather than § 541a, and that it is timely under the three-year limitations period. Opp. at PageID.924. But Plaintiffs cannot take advantage of a longer limitations period simply by placing a "common law" label on their claim. *Id.* at

PageID.927. Michigan courts "conduct a gravamen analysis when a plaintiff attempts to avoid the applicable statute of limitations by ignoring the true nature of the wrong alleged and recasting it as a claim subject to a longer statute." *PCA Minerals, LLC v. Merit Energy Co.*, 725 F. App'x 342, 348 (6th Cir. 2018). It is "[t]he type of interest harmed, rather than the label given the claim, [that] determines what limitations period controls." *Seebacher v. Fitzgerald, Hodgman, Cawthorne & King, P.C.*, 449 N.W.2d 673, 675 (Mich. Ct. App. 1989); *see* Mot. at PageID.472.

Plaintiffs argue that "[t]he true nature of the wrong [] Sterling alleges is that Seligman violated his common law duties . . . not his statutory duties . . . ." Opp. at PageID.925. But Plaintiffs never explain how an officer who is also a shareholder can violate a duty he holds in one capacity but not the other, any difference between these two sets of duties, or how Plaintiffs' common-law claim differs in any way from the available, and undisputedly time-barred, statutory claim. They rest instead on the bare allegation in the Complaint that Seligman breached the duties of good faith, due care, and loyalty. Compl. ¶ 95, PageID.35. But those are precisely the duties imposed *by statute* on corporate officers and directors. MCL § 450.1541a. Thus, the gist of Plaintiffs' "would be" common-law claim is identical to the time-barred statutory claim. Plaintiffs do not allege (or even argue) otherwise.

Plaintiffs do argue that common-law breach of fiduciary duty claims remain "viable" despite § 541a's statutory cause of action. Opp. at PageID.927-928 (citing

*Murphy v. Inman*, 983 N.W.2d 354, 367 (Mich. 2022)). This is a red herring. Seligman does not claim that § 541a displaced all common-law claims for breach of fiduciary duty. But where, as here, a plaintiff asserts a common-law claim that is coextensive with (and indeed identical to) an available statutory claim, the shorter statutory limitations period applies. This position is squarely supported by *Baks v. Moroun*, which held that a common-law claim "is subject to the period of limitation set forth in § 541a(4) if the action alleges conduct that violates the standard of conduct for directors and officers found in § 541a(1)." 576 N.W.2d 413, 419 (Mich. Ct. App. 1998). Plaintiffs' claim does just that; it is thus subject to the two-year statute of limitations and undisputedly time-barred.[1]

### 2.   Plaintiffs' Preferred Three-Year Period Also Bars Their Claim

Even if the applicable limitations period is three years rather than two, Plaintiffs' claim for breach of fiduciary duty is still untimely because Plaintiffs were on notice of the facts underlying their claim by March 31, 2018, more than three

---

[1] With nowhere to go, Plaintiffs misleadingly assert that *Baks* has been overruled. Opp. at PageID.928-929 (citing *Estes v. Idea Eng'g & Fabricating, Inc.*, 649 N.W.2d 84 (Mich. Ct. App. 2002)). But *Estes* only overruled *Baks*' subsidiary holding that MCL § 450.1489 (which addresses shareholder oppression claims, not § 541(a)) did not create an independent cause of action. As a result, the *Estes* court held that claims brought under *that* statute (§ 1489) were not subject to a two-year limitations period. *Estes*, 649 N.W.2d at 93. *Estes* did not alter the central holding of *Baks* that a common-law claim which is co-extensive with a statutory claim is subject to the two-year statutory limitations period. *Id.* at 85. Unlike the plaintiffs in *Estes*, Plaintiffs here admittedly have no independent statutory cause of action.

years before the effective date of the parties' tolling agreement. Plaintiffs incorrectly assert (without citation) that "it is undisputed that Sterling's claims are timely under the [three-year] statute of limitations appli[c]able to common law fiduciary duty claims." Opp. at PageID.929. This unsupported assertion is contradicted by the Complaint itself, as Seligman made clear in his Motion to Dismiss.

As Seligman explained, "the face of the Complaint shows that [Plaintiffs] discovered or should reasonably have discovered [their] claims against Seligman by March 31, 2018." Mot. at PageID.470. That statement was not buried; it appears within a section entitled "The Complaint Shows Plaintiffs Were on Discovery Notice of their Breach of Fiduciary Duty Claim by March 2018." *Id.* at PageID.469; *see also id.* at PageID.458 ("[T]he Complaint confirms that Plaintiffs were on discovery notice of their claims by the time of the OCC Report of Examination on March 31, 2018…."); *id.* at PageID.470 (same). Yet, in their Opposition, *Plaintiffs do not dispute*—indeed, they don't even acknowledge or address—Seligman's unambiguous assertions that the Complaint establishes Plaintiffs were on discovery notice of their claim more than three years before the effective date of the Tolling Agreement. Plaintiffs cannot ignore their own allegations.

Accordingly, Plaintiffs have forfeited any argument that their claim is timely under the three-year limitations period they contend applies to their "common-law" claim. *See Humphrey v. U.S. Att'y Gen.'s Off.*, 279 F. App'x 328, 331 (6th Cir. 2008)

(holding that a party waives challenge to argument made in motion to dismiss by failing to respond to it); *Brown v. Gojcaj Foods, Inc.*, No. 09-14537, 2011 WL 1980533, at *3 (E.D. Mich. May 20, 2011) ("If a party fails to respond to an argument raised in a motion the court can assume that opposition to the motion is waived and the motion may be granted."). Regardless of which limitation period applies, Plaintiffs' claim is untimely.

### B.   Seligman Was Not a "Controlling Shareholder"

Even if timely, Plaintiffs' claim for breach of fiduciary duty fails as a matter of law because Seligman was not a controlling shareholder of either Sterling or the Bank. *See* Mot. at PageID.473-480. As to the Bank, Plaintiffs do not dispute that *Seligman was not a shareholder at all* and fail to identify any Michigan statute or case law that imposes shareholder fiduciary duties on a non-shareholder. *See* Opp. at PageID.935. As to Sterling, Plaintiffs' allegations are insufficient to establish either majority ownership or actual control by Seligman. *See id.* at PageID.932 (citing *Kahn v. Lynch Commc'n Sys., Inc.,* 638 A.2d 1110, 1113-14 (Del. 1994)).

### 1.   Seligman Was Not a Majority Shareholder

Seligman did not own at least 50% of Sterling's stock during the relevant time period, and thus was not a majority shareholder. Because this undisputed fact destroys Plaintiffs' "controlling shareholder" theory, they argue—without any factual basis—that Seligman's shareholdings should be aggregated with those held

in irrevocable trusts and those held by (or for) other members of his family, to arrive at 70%. Opp. at PageID.932. The sole case Plaintiffs rely on for this approach, *see id.* at PageID.933, makes clear, however, that Plaintiffs would need to allege, at the very least, that Seligman and (at least some of) his family members acted as a "control group," and plead facts "sufficient to make the [Seligman] Family's status as a control block reasonably conceivable," *Buttonwood Tree Value Partners, L.P. v. R.L. Polk & Co.*, No. 9250-VCG, 2017 WL 3172722, at *6 (Del. Ch. July 24, 2017). Absent such allegations (and there are none here), "common familial relationships among holders of a majority of corporate voting power are not *per se* sufficient to establish a controlling group of stockholders." *Id.*

None of Seligman's family members are alleged to have engaged in any of the challenged conduct. To the contrary, the Complaint alleges only the "appearance to the outside world that Seligman controlled all of the family holdings." Compl. ¶ 19 n.1, PageID.9. This conclusory allegation is insufficient to establish even an inference of control, and is flatly contradicted by Sterling's own SEC filings—referenced in the Complaint, ¶ 20, PageID.9—which acknowledge the *separate* ownership and control not only of the family members' shares, but also the shares held in irrevocable trusts. *See* Mot. Ex. A. at PageID.624 (trustee "holds sole voting and dispositive power over shares held" by the irrevocable trusts); *see also Berlin v. Emerald Partners*, 552 A.2d 482, 490 (Del. 1988) (holding that shares held in

irrevocable trusts do not count toward a shareholder's "ownership and control" of a corporation).[2]

### 2.   Seligman Did Not Control the Board

Because Seligman was a *minority* shareholder of Sterling, he had no fiduciary duties to the corporation unless he "ha[d] effective control of the board." Mot. at PageID.477-480 (quoting *Corwin v. KKR Fin. Holdings LLC*, 125 A.3d 304, 307 (Del. 2015), and *Olenik v. Lodzinski*, 208 A.3d 704, 718 (Del. 2019), and citing, *inter alia*, *Fenestra Inc. v. Gulf Am. Land Corp*., 141 N.W.2d 36, 37-39, 42, 51-52 (Mich. 1966)). Every corporation is controlled by a board of directors. MCL §§ 450.1501, 450.1531(1); Mot. Ex. E at PageID.851, 855. Management is accountable to the board and has no "authority to act" unless the board so permits. MCL § 450.1535(1); *see* Mot. Ex. E at PageID.855. Therefore, unless a minority shareholder controls the board, that shareholder cannot control the corporation, *regardless* of what influence (if any) he may have with management.

The Complaint *does not allege* that Seligman had control over Plaintiffs' common Board. Seligman hammered this point home in his Motion to Dismiss, and

---

[2] Contrary to Sterling's footnoted suggestion, *see* Opp. at PageID.933, the Court cannot ignore the Company's own public filings. When a document "referenced in the plaintiff's complaint" "contradicts allegations in the complaint . . . the [document] trumps the allegation." *Gulfside Casino P'ship v. Churchill Downs Inc*., 861 F. App'x 39, 42 (6th Cir. 2021); *see also Nolan v. Detroit Edison Co.*, 991 F.3d 697, 707 (6th Cir. 2021) ("When a document contradicts allegations in the complaint, rendering them implausible, the exhibit trumps the allegations.").

Plaintiffs do not dispute it in their Opposition. Quite the contrary, Plaintiffs go out of their way to make clear that Seligman *could not* have controlled the Board. *See* Opp. at PageID.925-926 (citing Ex. A at Art. III Sec. 14). Plaintiffs helpfully attach the Bank's Bylaws, which mandate that Seligman shall not "perform the same functions as a director," "vote on any matter before the board," or "exercise significant influence over, or participate (other than in an advisory capacity) in, major policy-making decisions of the board." *Id.* at PageID.926. Given that Plaintiffs nowhere allege that Seligman failed to abide by the Bylaws, this provision alone precludes any contention that Seligman was a "controlling shareholder."

Plaintiffs instead insist that allegations of control over a corporation's management *without* "control over a majority of the board" can suffice "to establish [a] defendant is a controlling shareholder." *Id.* at PageID.936-937. The pertinent authorities, however, identify control over management as an additional, not an alternative, indicium of control. *See Olenik*, 208 A.3d at 718 (requiring that "a controlling stockholder . . . have 'effective control of the board' *and* exercise control over the corporation's conduct" (emphasis added)); *Fenestra*, 141 N.W.2d at 52 (requiring "actual control *and* management of the corporation" (emphasis added)). Were it otherwise, Plaintiffs' "control over management" rule would turn all senior executives into controlling shareholders.

Plaintiffs cite *no case* in which a minority shareholder has been held to be a

"controlling shareholder" *without* the ability to control the board, and we are aware of none. Indeed, the unpublished Chancery Court decisions on which Plaintiffs primarily rely undermine their own theory. *See* Opp. at PageID.935-936, 938. One expressly states that "control manifests in whether an individual or entity has the power to displace the will of the board." *In re Pattern Energy Grp. Inc. Stockholders Litig.*, No. 2020-cv-0357-MTZ, 2021 WL 1812674, at *37-38 (Del. Ch. May 6, 2021) (alterations adopted)). Another looked to whether a shareholder "d[id], in fact, exercise actual control over the board of directors" in determining "actual control." *Basho Techs. Holdco B, LLC v. Georgetown Basho Invs., LLC*, No. CV 11802-VCL, 2018 WL 3326693, at *26-28 (Del. Ch. July 6, 2018).

Plaintiffs begrudgingly admit that the line of published appellate cases invoked by Seligman—*i.e.*, *Fenestra*, *Crowin*, and *Olenik*—"stand for the proposition that a minority shareholder cannot be held responsible for a discrete transaction specifically approved by a board that he did not control." Opp. at PageID.938. Precisely. Because Plaintiffs' Board had ultimate authority over the ALP and responsibility for the Bank's compliance with federal laws and regulations, and because Seligman admittedly did not control that Board, Seligman (as a minority shareholder) cannot be held liable as a matter of law for the Board's own failures.

3. Plaintiffs' Concealment Theory Is Legally Insufficient And Inadequately Pleaded

Plaintiffs make the last-ditch argument that they are seeking to "hold

11

Seligman liable" for actions the Bank took "while [Seligman] [kept] the true facts from the Board." *Id.* at PageID.937-939. But they cite *no* case holding that shareholder control can be established by concealment or deceit, even if adequately pleaded. That is because, among other reasons, the Board itself has the fiduciary duty to keep itself fully informed and apprised of material affairs. *See Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 367 (Del. 1993).

In any event, this aspect of Plaintiffs' liability theory "sounds in fraud" and therefore "trigger[s] the particularity requirement of Rule 9(b)." *Gilmore v. First Am. Title Ins. Co.*, No. 07-12123, 2009 WL 2960703, at *3 (E.D. Mich. Sept. 11, 2009) (citations omitted). Plaintiffs cannot proceed on a theory of concealment unless they "specify the 'who, what, when, where, and how' of the alleged fraud." *New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 411 (6th Cir. 2022). Yet the Complaint contains only one threadbare reference to Seligman's alleged concealment of unspecified "risks" at an unspecified time in an unspecified way from the Board. Compl. ¶ 63, PageID.24. This is not enough to meet even the *Twombly* standard, let alone the heightened requirements of Rule 9(b).

Nor is Plaintiffs' inadequately pleaded theory of concealment plausible. The Bank (and the Board) were on notice of issues with the ALP no later than March 31, 2018, when the OCC delivered its Report of Examination. Mot. at PageID.470. The Complaint does not allege with the requisite particularity that Seligman concealed

*anything* from the Board after that date—*i.e.*, within the limitations period argued by Plaintiffs. Nor does the Complaint allege that Seligman had (or could have had) knowledge of material facts that were not also known to the Bank's management. Most damningly, Plaintiffs do not explain how any of their cursory allegations would have led the Board to make a decision on anything related to any issue in this case.

## II.   THE COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT

### A.   There is Nothing "Unjust" About a Shareholder's Receipt of Dividends

As Plaintiffs recognize, "the declaration of dividends is reserved to the discretion of the board." Opp. at PageID.943. Once a dividend was validly declared by the Board, Seligman had the same right as every other shareholder on the record date to receive and retain the dividend. *See* Mot. at PageID.485. Plaintiffs cannot cite a single case in which a corporation successfully clawed back duly authorized and disbursed dividends under a theory of unjust enrichment.

Plaintiffs insist, however, that even if Seligman was *legally* entitled to the dividends (as he clearly was), "he is obligated by *equity* to make restitution." Opp. at PageID.944 (quoting *Tkachik v. Mandeville*, 790 N.W.2d 260, 266 (Mich. 2010)). But to proceed on a claim for equitable unjust enrichment, Plaintiffs had the burden to plead (and ultimately prove) that they have no adequate remedy at law. Mot. at PageID.492 (citing *Duffie v. The Mich. Grp., Inc.*, No. 14-cv-14148, 2016 WL

13

28987, at *17 (E.D. Mich. Jan. 4, 2016)). As Seligman has pointed out—and as Plaintiffs do not dispute—the Complaint contains no such allegations.

Plaintiffs argue, inconsistently, that they are asserting "a *legal* claim for unjust enrichment, not an equitable one requiring such an allegation." Opp. at PageID.952. There is no such thing. *See AFT Mich. v. Michigan*, 846 N.W.2d 583, 677 (Mich. Ct. App. 2014) ("Unjust enrichment is an equitable doctrine."); *see also Wright v. Genesee Cnty.*, 934 N.W.2d 805, 811 (Mich. 2019). Regardless, Plaintiffs cannot have it both ways: If this is a legal claim, it fails because Seligman had the same right to dividends as every other shareholder; and if it is an equitable claim, it fails because Plaintiffs failed to plead that they lack an adequate remedy at law.

Undaunted, Plaintiffs maintain that "[t]he Complaint alleges the Board issued dividends based on an inflated valuation of Sterling . . . [which] was inflated because Seligman concealed wrongdoing in connection with the ALP." Opp. at PageID.946. Plaintiffs have cited no authority for the proposition that dividends declared based on incomplete information may be recouped from a single stockholder. Moreover, the Complaint does not allege that the Board issued dividends based on any purported ALP-related inflated valuation, nor does it plead what facts were purportedly concealed (or when or how) with the requisite specificity.

Apparently recognizing this pleading deficiency, Plaintiffs argue that they need not allege that Seligman improperly caused the dividend payments if

14

"circumstances" are such that "justice [would] require[]" Seligman to return the funds "for the protection of the interests of [Plaintiffs] or of third persons." Opp. at PageID.946-947 (quoting *Estate of McCallum*, 395 N.W.2d 258, 261 (Mich. Ct. App. 1986)). But "[i]t is neither unjust, unfair nor inequitable to give effect to an agreement which was not induced by mistake, overreaching, fraud or misrepresentation." *Michigan Med. Serv. v. Sharpe*, 64 N.W.2d 713, 714 (Mich. 1954). The Complaint contains no plausible allegations that, if proven, would permit the Court to find that requiring Seligman to return dividends duly authorized by the Board and paid to all shareholders equally is "necessary" to protect Plaintiffs or any third person. *Estate of McCallum*, 395 N.W.2d at 261. And Plaintiffs identify no Michigan authority that would require one stockholder (but no others) to surrender dividends duly authorized by a Board that he did not control.[3]

## B. Plaintiffs Cannot Avoid the Parties' Express Agreement Entitling Seligman to Dividends Declared by Sterling's Board

Sterling's Bylaws, which form an express contract between Seligman and Sterling, foreclose Plaintiffs' effort to recoup dividend payments via an unjust

---

[3] Plaintiffs cite *Reisenfeld & Co. v. Network Group, Inc.*, Opp. at PageID.946-947, but *Reisenfeld* applied a rule of "Ohio law" that the court acknowledged differed from the rule in other states. 277 F.3d 856, 860-61 (6th Cir. 2002). Moreover, the Ohio case upon which *Reisenfeld* relied was subsequently reversed by the Ohio Supreme Court and concerned circumstances not present here. *See Cosby v. Cosby*, 750 N.E.2d 1207, 1213 (Ohio Ct. App 2001), *rev'd* 773 N.E.2d 516 (Ohio 2002) (explaining that the defendant's retention of a benefit would eliminate property rights that a court had previously awarded to the plaintiff).

enrichment claim. *See* Mot. at PageID.490-492. Plaintiffs argue that a theory of implied contract would apply only if Sterling had claimed "it mistakenly rendered a service or delivered a good to Seligman." Opp. at PageID.951. That is exactly the theory Plaintiffs claim to pursue—*i.e.*, that the Board mistakenly "issued dividends based on an inflated valuation of Sterling." *Id.* at PageID.946.

Plaintiffs are therefore seeking restitution for Seligman's alleged "recei[pt] [of] a benefit from Sterling" and resulting "inequity . . . because Seligman retained the benefit." Compl. ¶¶ 98-99, PageID.36; Opp. at PageID.941. Where that is the theory of recovery, Michigan courts (including the cases upon which Plaintiffs rely) have made clear it is "a quasi-contract type of unjust enrichment claim." *Lee v. Cincinnati Cap. Corp.*, 434 F. Supp. 3d 601, 614 (E.D. Mich. 2020). But that claim is foreclosed here by the existence of an express contract—the Bylaws.

Plaintiffs also argue that Sterling's Bylaws do not govern this dispute because the Bylaws do not "provide[] the Court any specific guidance on how it should redress Seligman's wrongdoing." Opp. at PageID.951-952. Not so. The Bylaws provide that the Board "may from time to time declare and direct payment of dividends" and that: *"shareholders [are] entitled to receive payment of any dividend."* Mot. Ex. E at PageID.847-848 (emphasis added). In other words, the Bylaws provide specific guidance—just not the guidance Plaintiffs want (*i.e.*, individualized recoupment). Plaintiffs nowhere allege that Seligman breached this

16

or any other provision of the Bylaws (or, for that matter, any other agreement with Sterling or the Bank). Where, as here, conduct is governed by an express contract, it cannot be challenged based upon a purported quasi-contractual theory.

### C. The Complaint Does Not Allege that the Payments to the Nominal Non-Trust Defendants Benefited Seligman

Seligman has not been "enriched" by the other allegedly "unjust" payments because they were not made to him—the payments were made to the Nominal Non-Trust Defendants, which are independent juridical entities against which Plaintiffs have not even attempted to plead a claim. Mot. at PageID.488-489. Neither of Plaintiffs' responses change this fact.[4]

*First*, Plaintiffs invoke cases holding that "a benefit may be unjustly obtained by a defendant through an intermediary." Opp. at PageID.948. Plaintiffs' argument misses the point. Plaintiffs' claim vis-à-vis the Nominal Non-Trust Defendants fails not because Seligman received a benefit *indirectly*, but rather because he did not receive a benefit *at all*. There is no allegation that Seligman benefited from these

---

[4] In a footnote, Plaintiffs fault Seligman for failing to make an argument regarding the "$174,957 [that Sterling allegedly] paid directly to Seligman from 2013 to 2020." Opp. at PageID.942. Seligman did not make such an argument because Plaintiffs assert no claim to recoup that money. *See* Compl. ¶ 100, PageID.36 (requesting return of dividend payments and payments to the Nominal Non-Trust Defendants, but not the direct payments to Seligman); *id.* ¶ 3, PageID.3 (same). Even if Plaintiffs had sought recoupment of the $174,957 allegedly paid directly to Seligman, that claim would fail. Like the rest of the allegedly unjust payments, the Complaint does not allege that these direct payments were induced by any improper conduct. *See* Mot. at PageID.484, 486-487.

payments, directly or indirectly.

*Second*, Plaintiffs say this case "involves allegations that a nominal defendant held ill-gotten funds as an agent of their principal." *Id.* at PageID.949. But the only allegation Plaintiffs cite for this proposition is that "[t]he Nominal Defendants are affiliated with and controlled by Seligman." *Id.* at PageID.948 (quoting Compl. ¶ 10, PageID.6). That allegation is not sufficient to plead a principal-agent relationship as a matter of law. *See Comm'r v. Bollinger*, 485 U.S. 340, 346 (1988) ("[T]he mere fact of the parent's control over the subsidiaries d[oes] not establish the existence of an agency."), *cited with approval in Stringwell v. Ann Arbor Pub. Sch.*, No. 264252, 2006 WL 2355492, at *3 (Mich. Ct. App. Aug. 15, 2006).

Indeed, this Court has rejected the precise theory Plaintiffs advance here. In *Reyes-Trujillo v. Four Star Greenhouse, Inc.*, the plaintiffs brought an unjust enrichment claim for benefits received by Four Star Greenhouse. 513 F. Supp. 3d 761, 801 (E.D. Mich. 2021). The plaintiffs also sued Thomas Smith, "Four Star's owner and corporate officer." *Id.* at 800. And like here, the plaintiffs alleged that "Smith . . . maintain[ed] operational control of the Four Star enterprise." Compl., *Reyes-Trujillo*, No. 5:20-cv-11692 (E.D. Mich. June 25, 2020), ECF No. 1, at PageID.6. Nonetheless, this Court dismissed the unjust enrichment claim against Smith, finding no adequate "allegations that Four Star's corporate form should be

ignored." *Reyes-Trujillo*, 513 F. Supp. 3d at 800. The same should occur here.[5]

## III.  THE WRONGFUL-CONDUCT RULE BARS THIS LAWSUIT

Plaintiffs' claims are independently barred by Michigan's wrongful-conduct rule because the Complaint itself establishes that Plaintiffs (including their common Board) are responsible for the alleged misconduct they attempt to pin on Seligman. Mot. at PageID.492-495. Before filing this lawsuit, the Bank entered into a consent order with federal banking regulators and settlements with civil plaintiffs regarding the ALP. Compl. ¶¶ 78, 80, PageID.29-31. Plaintiffs' former employees also pleaded guilty to bank and wire fraud in connection with the ALP. Compl. ¶¶ 44, 47, 52, PageID.17-20. More recently, Sterling agreed to plead guilty to criminal securities fraud arising out of the ALP. *See* https://www.justice.gov/opa/pr/sterling-bancorp-inc-plead-guilty-69m-securities-fraud. Seligman is not a party to these agreements.

It is implausible to suggest that Seligman is more culpable than Plaintiffs or their Board of Directors, and the Complaint contains no allegations from which a factfinder could reach such a conclusion. Nevertheless, Plaintiffs invoke a rare exception to Michigan's wrongful-conduct rule to argue that "Seligman's culpability" was "significantly greater than Sterling's." Opp. at PageID.955. But the relative-culpability exception to the wrongful conduct rule only applies "where a

---

[5] The Nominal Non-Trust Defendants are not properly named nominal defendants, and the Court should either dismiss them under Rule 12(b)(6) or drop them under Rule 21. Mot. at PageID.489.

defendant was *egregiously more at fault* than a plaintiff," *Stopera v. DiMarco*, 554 N.W.2d 379, 382 n.5 (Mich. Ct. App. 1996) (emphasis added), and the Complaint does not come close to satisfying that standard.

Adopting Plaintiffs' approach would "eviscerate the wrongful conduct rule entirely." *Stopera*, 554 N.W.2d at 382 n.5. "[P]resumably, a plaintiff will almost always be able to argue that, if the allegations of a complaint are proved, a defendant's misconduct will be shown to be at least somewhat greater than the plaintiff's." *Id.* Because Plaintiffs' wrongful conduct is apparent from the face of the Complaint, and because the Complaint fails to allege that Seligman was "*egregiously more at fault*" than Plaintiffs themselves, this Court should dismiss their claims with prejudice. *See Scalici v. Bank One, NA*, Nos. 254632–34, 2005 WL 2291732, at *7 (Mich. Ct. App. Sept. 20, 2005).

## **CONCLUSION**

For the reasons stated herein and in Defendants' opening brief, ECF No. 26, the Complaint should be dismissed with prejudice.

DATED:  April 13, 2023                    Respectfully submitted,

 */s/ Jeffrey B. Morganroth*                     */s/ Chantale Fiebig*
Jeffrey B. Morganroth (P41670)          Chantale Fiebig
Morganroth & Morganroth, PLLC        Mark A. Perry
344 North Old Woodward Avenue,       Crystal L. Weeks
Suite 200                                           Weil, Gotshal & Manges LLP
Birmingham, MI 48009-5310             2001 M Street, NW, Suite 600
(248) 864-4000                                    Washington, DC 20036
jmorganroth@morganrothlaw.com       Telephone: (202) 682-7000

*Counsel for Defendant Scott Seligman and Nominal Defendant Scott J. Seligman Revocable Living Trust*

/s/ *Kevin M. Mulcahy*
Kevin M. Mulcahy (CA: 211955)
Flannery | Georgalis, LLC
719 Griswold Street, Suite 280
Detroit, MI 48226
Telephone: (313) 488-0147
KMulcahy@flannerygeorgalis.com

*Counsel for Nominal Defendants Seligman Family Foundation, 311 California LP/tax Kiss LP CO, Presidential Aviation, Inc., SM Farthington, LTD LLC, Seligman & Associates Inc., and Seligman Administrative Office*

Fax: (202) 857-0940
chantale.fiebig@weil.com
mark.perry@weil.com
crystal.weeks@weil.com

*Counsel for Defendant Scott Seligman and Nominal Defendants Scott J. Seligman Revocable Living Trust, Seligman Family Foundation, 311 California LP/tax Kiss LP CO, Presidential Aviation, Inc., SM Farthington, LTD LLC, Seligman & Associates, Inc., and Seligman Administrative Office*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 13th day of April, 2023, I caused a copy of the foregoing document to be electronically filed with the U.S. District Court for the Eastern District of Michigan, and notice will be sent by operation of the Court's electronic filing system to all ECF participants.

DATED: April 13, 2023                                         Respectfully Submitted,

*/s/ Chantale Fiebig*
Chantale Fiebig